UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-23847-CIV-SCOLA/GOODMAN

ERIC WARD,

    Plaintiff,

v.

M/Y UTOPIA IV, Official No. 1305829, MMSI No. 339328000, her engines, tackle, gear, appurtenances, etc., *in rem*, UTOPIA YACHTING LLC, *in personam*

    Defendants.
_____/

### INTERVENING VERIFIED COMPLAINT OF SEAMAN FRED WENNBERG

Intervening Plaintiff, FRED WENNBERG ("Wennberg"), by and through his undersigned counsel and pursuant to Rule 24 of the Federal Rules of Civil Procedure hereby sues Defendants in Intervention, M/Y UTOPIA IV and UTOPIA YACHTING LLC and alleges:

### PRELIMINARY STATEMENT

1.    This is an action for Jones Act negligence, unseaworthiness and unpaid maintenance and cure brought by Mr. Wennberg, who was the Chief Engineer onboard the 175.8 foot Rossinavi Motor Yacht "M/Y UTOPIA IV" (the "Yacht").

2.    Intervening Plaintiff seeks a trial by jury to recover the amounts due for Jones Act negligence, unseaworthiness and maintenance and cure, consequential damages, attorneys' fees and costs, and punitive damages.

### JURISDICTION AND VENUE

3. Intervening Plaintiff Wennberg is a seaman within the meaning of 28 U.S.C. §1916 and can file suit without pre-paying filing fees or costs.

4. Intervening Plaintiff Wennberg is resident of the State of Florida.

5. UTOPIA YACHTING LLC ("Utopia"), is the record owner of the M/Y Utopia IV, is a corporation formed under the laws of Delaware, and is subject to jurisdiction in this state pursuant to Fla. Stat §§ 48.193 because Defendant personally or through an agent:

    a. Operated, conducted or engaged in or carried on a business venture in this state and/or county including operating its primary asset, the Yacht in this State; hired employees in this state; entered into contracts in this state; and purchased provisions and fuel for the Yacht in this state.

    b. Engaged in substantial and not isolated activity within this state, by, among other things operating its primary asset, the Yacht in this State; hired employees in this state; entered into contracts in this state; and purchased provisions and fuel for the Yacht in this state.

    c. Committed tortious acts within this state including negligently injuring Intervening Plaintiff Wennberg and failing to pay maintenance, cure and wages owed to Wennberg.

6. This Court's personal jurisdiction over Utopia, comports with the right to due process under the Due Process clause of the Fourteenth Amendment to the U.S. Constitution as Utopia, has established sufficient "minimum contacts" with the state of Florida and the exercise of this jurisdiction over the Yacht and Utopia would not offend "traditional notions of fair play and substantial justice."

7. Utopia's contacts in Florida 1) are related to the Intervening Plaintiff's causes of action or have given rise to it; 2) involve some purposeful availment of the privilege of

conducting activities within the forum, thereby invoking the benefits and protections of its laws; 3) are such that it should reasonably anticipate being haled into court here. As stated herein, Utopia owned vessels, including the M/Y UTOPIA IV, and hired seamen, crew, captains, and other workers to work for Utopia, aboard its vessels. Utopia, then failed to pay wages, as agreed, to the Intervening Plaintiff for work performed on the Yacht as a crewmember.

8. In determining whether conferring jurisdiction would offend "traditional notions of fair play and substantial justice," courts weigh the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief. *Sculptchair,* 94 F.3d at 631. Utopia should not escape Florida's judicial system for failing to pay wages and contractual benefits to the seaman employees it hired for work aboard its vessel in Florida.

9. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because this is a claim for Jones Act negligence, unseaworthiness and maintenance and cure arising under the general maritime law of the United States.

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00 USD), exclusive of interest, attorneys' fees, and costs, and is between citizens of different states.

11. Venue is proper in the Southern District of Florida pursuant §1391(b)(2) because a substantial portion of the events at issue occurred in this District, including but not limited to: Plaintiff Wennberg was negligently injured in the District, the failure to pay maintenance and cure occurred in part in this District; the Intervening Plaintiff was hired by the Defendant in this District; and the Intervening Plaintiff is domiciled in this District.

## RELEVANT FACTS

12. On or about October 23, 2021, Wennberg joined the Yacht as Chief Engineer.

13. Intervening Plaintiff Wennberg has been injured five times in five different instances aboard the Yacht.

14. The Defendant has never paid maintenance to the Intervening Plaintiff for any of the injuries suffered aboard the Yacht.

15. The Defendant has also failed to pay cure for many of the medical expenses incurred because of his injuries, even though documentation of those treatments have been readily provided to the Yacht.

16. <u>First Incident</u>:

   a. On November 12, the Yacht was docked at Newport, Rhode Island.

   b. Intervening Plaintiff Wennberg was injured aboard the Yacht in the engine while working on the Yacht's engines.

   c. One of the crew members removed a floor plate from the engine room, which exposed Intervening Plaintiff Wennberg to a falling hazard as it exposed the space under the floorboards.

   d. The area surrounding the removed floor plate and the hole was not marked off with cones or caution tape to alert other crew members to the falling hazard.

   e. Intervening Plaintiff, unaware of the removed floor plate, walked into the engine room to carry out his duties for the day.

   f. As Intervening Plaintiff was walking across the engine room, he fell through the hole left by one of the other crew members as the floor plate was removed.

   g. The Yacht did not have any safety procedures or training for the crew when they were to remove deck plates in order to access the underside of the engines.

    h.  None of the crew members were provided adequate training to place safety and warning signs and cones around hazards through the Yacht.

    i.  Intervening Plaintiff suffered significant injuries as a result of the incident, such as a deep gashes on his leg and had to be transported to the hospital in Providence, Rhode Island for emergency treatment.

17.  On or about November 14, the Yacht moves to the South Florida area.

18.  On November 14 and November 16, while Intervening Plaintiff was in the South Florida area, Intervening Plaintiff visited a medical provider for follow up care on his leg laceration injury from the First Incident, which the Defendants have failed to pay for as a cure benefit.

19.  <u>Second Incident</u>:

    a.  On December 21, 2021, Intervening Plaintiff suffered an injury aboard the Yacht.

    b.  One of the crew members had improperly placed a metal plate in the tender garage, above where the toolbox was stored.

    c.  As Intervening Plaintiff was walking through the tender garage, the improperly placed metal plate slid off and fell on top of Intervening Plaintiff Wennberg, causing injuries to his head and face.

20.  <u>Third Incident</u>:

    a.  On night of December 23, 2021, the Yacht collided with the Tropical Breeze, an oil tanker ("Tropical Breeze"), off the coast of the Bahamas.

    b.  Before the collision, one of the crew members entered the bridge and saw the Captain and First Mate inside in a meeting.

c.  The crew member saw the First Mate leave the bridge after the meeting, leaving himself and the Captain in the bridge.

d.  The Captain then left the bridge, leaving the crew member alone for a few minutes before he returned.

e.  A few minutes before the collision, the Captain again left the bridge, leaving the crew member alone while nobody was driving the Yacht.

f.  The crew member began to enter the Yacht's heading information into the logbook and as he was doing so, the Yacht collided with the Tropical Breeze.

g.  At the time of the collision, the Yacht's second mast light was not functioning.

h.  Additionally, at the time of the collision, the Yacht's 12-mile radar was not functional.

i.  The crew member was not trained on being a nighttime lookout but nonetheless was left alone in the bridge at night.

j.  Intervening Plaintiff Wennberg was inside of his cabin during the incident and as a result of the collision, violently crashed into the bulkhead, causing multiple injuries, such as whiplash, back and lumbar injuries and PTSD.

k.  Due to these injuries, Intervening Plaintiff was involved in months of physical therapy and medical treatment in South Florida, most of which was not paid for as a cure benefit by the Yacht.

l.  In addition, the Yacht did not provided maintenance during the period of his treatment when he was unable to work.

m.  These injuries caused Intervening Plaintiff pain and suffering and mental trauma.

21. <u>Fourth Incident:</u>

    a. On January 4, 2022, Intervening Plaintiff Wennberg was injured once again aboard the Yacht.

    b. During the collision from December 23, 2021, the drawer where the Yacht's toolbox was placed was damaged.

    c. The damage caused the drawer's rails and inserts to stick out from the drawer, which posed a hazard to crew members as they passed by.

    d. This damage was never fixed and the handles and railings continued to stick out from the drawer.

    e. Intervening Plaintiff Wennberg was unaware of this hazard and as he walked past the drawer, his leg was cut by the railings and handles of the toolbox drawer.

    f. Intervening Plaintiff Wennberg suffered injuries that required immediate medical treatment in the hospital due to this incident.

22. <u>Fifth Incident:</u>

    a. On January 22, 2022, Intervening Plaintiff Wennberg was finally injured due to an improperly wired lithium ECR Powersports battery ("battery") that exploded on the Vessel.

    b. The Yacht was docked at the Merrill-Stevens yard in Miami.

    c. The battery had been jerry rigged to be fed continuous power by the Yacht's previous engineer as the battery itself had lost its ability to hold a charge.

    d. The explosion caused severe injuries to Intervening Plaintiff Wennberg, including a temporary loss of hearing, poisoning from smoke inhalation, loss of voice, shortness of breath and more.

    e. The Yacht has also failed to pay for most of the medical bills as a cure benefit for this injury.

    f. In addition, the Yacht did not provided maintenance during the period of his treatment when he was unable to work.

    g. These injuries caused Intervening Plaintiff pain and suffering and mental trauma.

23. Finally, on February 25, 2022, while Intervening Plaintiff Wennberg was on leave to receive treatment for his injuries, the Yacht terminated his employment.

## COUNT I

## FAILURE TO PROVIDE PROMPT AND ADEQUATE MAINTENANCE AND CURE AND WAGES AGAINST UTOPIA

Plaintiff readopts and re-alleges paragraphs 1 through 23, and further alleges:

24. Under the General Maritime Law, Intervening Plaintiff, as a seaman, is entitled to recover maintenance and cure from Utopia until he is declared to have reached maximum possible cure. This includes unearned wages, (regular contract wages, overtime, vacation pay, and tips), which are reasonably anticipated by the end of the contract or voyage, whichever is longer.

25. Upon Intervening Plaintiff being injured in the service of the Yacht, it became the duty of Utopia to furnish Intervening Plaintiff with maintenance until such time as he reaches maximum cure.

26. Utopia has not provided Intervening Plaintiff with maintenance and cure for a period of time after his injury and prior to the point that Intervening Plaintiff will reach maximum medical cure.

27. Defendant's delay, failure and/or refusal to pay Intervening Plaintiff's maintenance, cure, and wages is, moreover, willful, arbitrary, capricious, and in disregard of the Intervening Plaintiff's rights as a seaman.

28. As a result, Intervening Plaintiff suffered harm, including, without limitation, bodily injury, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Intervening Plaintiff will suffer the losses in the future.

WHEREFORE, Intervening Plaintiff demands judgment against UTOPIA YACHTING LLC together with any and all compensatory and punitive damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

## COUNT II

### JONES ACT NEGLIGENCE AGAINST UTOPIA AND THE YACHT

Plaintiff incorporates by reference paragraphs 1 through 23 above as though fully incorporated herein.

1. At all times material, Utopia was the Intervening Plaintiff's Jones Act Employer for the Yacht and had a fundamental, absolute and non-delegable duty under the Jones Act, 46 U.S.C § 30104, to provide the Intervening Plaintiff with a reasonably safe place to work and use ordinary care to maintain the Yacht in a relatively safe condition.

2. Utopia is liable for any injury resulting in whole or in part from its negligence or the negligence of its, agents, or employees.

3. Intervening Plaintiff's multiple injuries were due to the negligence of Utopia and/or its agents, servants, and/or employees, including, without limitation, caused in one or more of the following ways:

   a. Negligently failing to train crewmembers in safe working practices in the engine room when a floor panel is removed for access to the engines;

   b. Negligently failing to provide a reasonably safe environment for Intervening Plaintiff to work in;

   c. Negligently failing to have a properly trained look out while the Yacht is under navigation;

   d. Negligently failing to have proper training on lookout procedures

   e. Negligently failing to train the Captain to not leave the Yacht's bridge during his watch;

   f. Negligence of the Captain to leave the Bridge with an untrained crew member on watch;

   g. Negligently causing the collision that led to the Intervening Plaintiff's injuries;

   h. Negligently allowing the improperly wired battery to continue to be used on board;

   i. Negligently failing to appropriately repair the Yacht after the collision, leading to further hazards and injuries onboard the Yacht;

   j. Negligently failing to provide for adequate rest time for the crew members;

   k. Negligently failing to provide required lifesaving equipment;

4. The foregoing negligence caused the Intervening Plaintiff to suffer serious injuries, which requires and continues to require medical care and attention. Intervening Plaintiff's injuries are permanent in nature.

5. As a further direct and proximate result of the above-described negligence of Utopia, Intervening Plaintiff has in the past and will in the future suffer and incur the damages including: cost and expense of medical care, attention and treatment, the cost of travel necessary to secure said medical care; loss of earnings and a loss or impairment of earning capacity and working ability; pain and suffering, mental anguish, disfigurement, disability, inconvenience and loss of enjoyment of life.

**WHEREFORE**, Intervening Plaintiff, Fred Wennberg, demands judgment against the Defendant, Utopia and the Yacht, and further requests this Court award him damages for his injuries that were caused by the Defendants, the costs incurred by the Plaintiff in bringing this action, and any such other remedy and relief as this Court may deem just and appropriate.

## COUNT III

### UNSEAWORTHINESS AGAINST UTOPIA AND THE YACHT

Intervening Plaintiff incorporates by reference paragraphs 1 through 23 above as though fully incorporated herein.

6. Defendants owed Intervening Plaintiff a duty to provide him with a seaworthy Yacht, and it breached this duty, as set forth below.

7. The unseaworthiness of the Defendant's Yacht was a legal cause of injury and damage to Intervening Plaintiff.

8. The Yacht was unsafe and unfit due to conditions created by Defendant's conduct, including but not limited to:

    a. Failure to provide a capable and competent crew;

    b. Failure to train crewmembers in safe working practices in the engine room when a floor panel is removed for access to the engines;

    c. Failure to provide a reasonably safe environment for Intervening Plaintiff to work in;

    d. Failure to have a properly trained look out while the Yacht is under navigation;

    e. Failure to have proper training on lookout procedures;

    f. Failure to train the Captain to not leave the Yacht's bridge during his watch;

    g. Negligently causing the collision that led to the Intervening Plaintiff's injuries;

    h. The Yacht's crew was not properly trained, instructed or supervised;

    i. Negligently allowing the improperly wired battery to continue to be used on board;

    j. Negligently failing to appropriately repair the Yacht after the collision, leading to further hazards and injuries onboard the Yacht;

    k. Negligently failing to provide for adequate rest time for the crew members;

    l. Negligently failing to provide required lifesaving equipment;

9. Due to Defendant's actions or omissions, the unseaworthiness of the Yacht played a substantial part in bringing about or actually caused harm to the Intervening Plaintiff.

10. The harm caused to the Intervening Plaintiff was either a direct result or reasonably probable consequence of the unseaworthiness of the Yacht.

11. As a direct and proximate result of the above-described unseaworthiness of Defendant's Yacht, Intervening Plaintiff has in the past and will in the future suffer and incur the damages including: cost and expense of medical care, attention and treatment, the cost of travel

necessary to secure said medical care; loss of earnings and a loss or impairment of earning capacity and working ability; pain and suffering, mental anguish, disfigurement, disability, inconvenience and loss of enjoyment of life.

**WHEREFORE**, Intervening Plaintiff, Fred Wennberg, demands judgment against the Defendants Utopia and the Yacht and further requests this Court award him damages for his injuries that were caused by the Defendants, the costs incurred by the Intervening Plaintiff in bringing this action, and any such other remedy and relief as this Court may deem just and appropriate.

### DEMAND FOR JURY TRIAL

Intervening Plaintiff demands a trial by jury of any issue triable of right by a jury.

Dated: December 21, 2022

Respectfully Submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Intervening Plaintiff*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: kvartak@moore-and-co.com
Email: michael@moore-and-co.com
Email: mbode@moore-and-co.com

s/ Kavan Vartak
Kavan Vartak, Esq.
Florida Bar #1017058
Michael T. Moore
Florida Bar #207845

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2022 a true and correct copy of the foregoing was filed with the Court's electronic filing system, CM/ECF, which will send a notice of electronic filing to all counsel or parties of record.

s/ Kavan Vartak
Kavan Vartak, Esq.