United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eric Ward,<br>Plaintiff,<br><br>v.<br><br>M/Y *Utopia IV*, Official No. 1305829,<br>MMSI No.339328000, her engines,<br>tackle, gear, appurtenances, etc., *in rem*, Utopia Yachting LLC, *in personam*, Defendants. | Civil Action No. 22-23847-CIV |

### Order Granting Motion to Dismiss Counterclaim

This matter is before the Court on Intervening Plaintiff / Counterclaim Defendant Ryan Fitzgerald's ("Fitzgerald") motion to dismiss. (Mot. Dismiss, ECF No. 60.) Fitzgerald joined Plaintiff Eric Ward in litigation against Defendants / Counterclaim Plaintiffs Utopia Yachting, LLC and M/Y *Utopia IV* ("Utopia" or "Defendants") under Federal Rule of Civil Procedure 24, claiming one count of negligence under the Jones Act and one count of unseaworthiness under admiralty law. (Compl., ECF No. 31.) The Defendants brought counterclaims against Fitzgerald asserting one count of tort indemnity and one count of equitable contribution under admiralty law (Countercl., ECF No. 41), and Fitzgerald filed a motion to dismiss. (ECF No. 60.) The Defendants filed a response to the motion (Resp., ECF. No 66), and Fitzgerald filed a reply. (Reply, ECF No. 67.) After careful consideration of the briefings, the record, and the relevant legal authorities, the Court **grants** Fitzgerald's motion to dismiss the counterclaim against him. (**ECF No. 60.**)

1. **Background**

This case centers around the collision of a yacht—the *Utopia IV*—with another vessel, and the resulting injuries to the *Utopia IV*'s crew and damage to both her and the other vessel. Defendant / Counterclaim Plaintiff Utopia Yachting, LLC, is the owner of the codefendant motor yacht *Utopia IV*, upon which Ryan Fitzgerald worked as a bosun. (Countercl., ECF No. 41, ¶¶ 5-6.)

As the *Utopia IV* navigated through Bahamian waters toward Nassau on the 23rd of December, 2021, Ryan Fitzgerald entered the wheelhouse in the evening to find therein Captain Matthew Inglis at the helm and First Mate Jeffry Weirzba working on the vessel's passage plan. (*Id.* ¶¶ 7-8; Compl. ¶¶ 15.) After Weirzba completed his duties he departed from the wheelhouse. (Countercl. ¶ 9.) Sometime after 9:00 pm, Captain Inglis departed from the wheelhouse to conduct

a safety check of passengers and the vessel. (*Id.* ¶¶ 10, 14.) Fitzgerald was thus left alone, and Captain Inglis tendered to him temporary command of the helm. (*Id.* ¶¶ 10-11.)

As the ship persisted underway at night with passengers and crew aboard, Fitzgerald began to log ship information in the wheelhouse logbook, which according to Defendants was not required under *Utopia IV* protocol. (*Id.* ¶¶ 12-13.) As he did this, the *Utopia IV* crashed into the motor tanker *Tropic Breeze*, causing the loss and sinking of that vessel as well as injuries to her crew and cargo, lost revenues to her owners, damage to the *Utopia IV* herself, and injuries to the *Utopia IV*'s crew. (*Id.* ¶ 15.)

Plaintiff Eric Ward, a seaman employed aboard the *Utopia IV* who became injured in the crash, thereafter sued Utopia for one count of negligence under the Jones Act, one count of failure to provide maintenance and cure under admiralty law, and one count of unseaworthiness under admiralty law. (ECF No. 1.) Fitzgerald joined the litigation bringing claims against Utopia for one count of unseaworthiness under admiralty law and one count of negligence under the Jones Act. (Compl., ECF No. 31.) Utopia then brought counterclaims against Fitzgerald for one count of tort indemnity and one count of equitable contribution under admiralty law (Countercl., ECF No. 41), whereupon Fitzgerald filed the instant motion to dismiss. (Mot. Dismiss, ECF No. 60.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 3. Analysis

The Defendants maintain that Fitzgerald is wholly responsible for damages because he abandoned his absolute, non-delegable duty as a deckhand and a seaman to ensure the safety of the vessel's operation, of her passengers, of her crew, and of the yacht herself. (Countercl., ECF No. 41, ¶ 18.) They say Fitzgerald had a duty to either accept the temporary tender of command or reject it if he was not comfortable with the responsibility; that his failure to reject it constituted an assumption of that duty; and that by making unnecessary logbook entries instead of acting as a lookout and maintaining the helm, Fitzgerald had abandoned that duty, created unseaworthiness, and caused the crash. (*Id.* ¶¶ 19-20.) They urge that their liability is passive and purely vicarious through Fitzgerald's acts of negligence. (*Id.* ¶ 23.) Thus, the Defendants say they are vicariously liable and non-negligent tortfeasors entitling them to relief under admiralty law through tort indemnity and equitable contribution. (*Id.* ¶¶ 23, 32.)

Fitzgerald argues the counterclaims should be dismissed because the Defendants are directly liable and negligent, precluding them from recovery under admiralty law for tort indemnity or contribution. (Mot. Dismiss, ECF No. 60.) He maintains that the Defendants failed to uphold their absolute, non-delegable duty to provide a seaworthy vessel; that such unseaworthiness caused him injury; and that irrespective of the cause—whether by Fitzgerald's inaction in the wheelhouse or by the captain's absence therefrom—Utopia is strictly and directly, and not vicariously, liable as the owner of the vessel. *Id.* Fitzgerald maintains that Defendants are also directly, not vicariously, liable under the Jones Act for negligence on part of their agent, Captain Inglis, insofar as Inglis delegated command of the helm of the 175-foot yacht to the unlicensed and untrained Fitzgerald, expecting him to both steer and simultaneously act as a lookout. *Id.*

After careful review the Court finds that the Defendants have not stated plausible claims for relief. Indemnity and contribution claims under admiralty law are available only in four narrow situations—the one relevant here being when a party is a vicariously liable or non-negligent tortfeasor. *See, e.g., Ondimar Transportes Maritimos, LTDA v. Beatty St. Properties, Inc.*, No. CIV.A. H-07-1223, 2008 WL 45793, at *7 (S.D. Tex. Jan. 2, 2008), *aff'd sub nom. Ondimar Transportes Maritimos v. Beatty St. Properties, Inc.*, 555 F.3d 184 (5th Cir. 2009) (observing that, under maritime law, "a vicariously liable or nonnegligent tortfeasor is entitled to indemnity from a codebtor guilty of actual fault."). The issue at hand is whether the Defendants fit this description. Based upon the counterclaim, the briefings, and the relevant caselaw, the Court finds that they do not. The Defendants are directly and strictly liable tortfeasors under both the seaworthiness doctrine and the Jones Act, precluding them from bringing indemnity and contribution claims.

Vicarious liability arises where a party "has not committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) (quoting Restatement (Third) of Torts: Apportionment Liab. § 13 cmt. b (2000)). Vicarious liability therefore stands in contrast to direct liability (for negligence, or otherwise) because direct liability is imposed where the liable party is also directly at fault based on the party's own failure to meet the relevant duty of care or other responsibility. *See id.* at 1167-69. The Defendants base their claims on the incorrect assumption that they are vicariously liable and non-negligent tortfeasors under seaworthiness doctrine and the Jones Act. (Resp., ECF No. 66.) Based only on a cursory review of the doctrines of direct and vicarious liability, Utopia's position seems reasonable—but a proper analysis of unseaworthiness under admiralty law and claims for negligence the Jones Act makes clear this is not so.

According to the seaworthiness doctrine of admiralty law a shipowner has an absolute, non-delegable duty to supply a seaworthy (safe) ship. *Yamaha Motor Corp USA v. Calhoun*, 516 U.S. 199, 208 (1996). This obligation is fulfilled by employing a competent crew with equal temperament, disposition, and seamanship to ordinary persons in the calling and by keeping in order all appliances appurtenant to the ship. *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 825 (11th Cir. 1985); *The Oceola*, 189 U.S. 158, 173 (1903). Because the duty is absolute, failure to meet this duty results in strict liability for shipowners, irrespective of a showing of fault. *Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 338-39 (1955); *Yamaha*, 516 U.S. at 208 (observing that the unseaworthiness doctrine imposes a duty that is "absolute" and that "failure to supply a safe ship resulte[s] in liability irrespective of fault and irrespective of the intervening negligence of crew members.") (cleaned up). Because the duty is non-delegable, unseaworthiness claims always run directly against the shipowner and cannot be brought against non-shipowners. *The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2287 (2019) (observing that "unseaworthiness claims run against the owner of the vessel" and therefore cannot be brought against the vessel's "master or operator."). The shipowner's liability is unaffected by a showing of negligence on part of the seamen on board because the seaman cannot be said to legally contribute to a vessel's unseaworthiness; if a vessel is unseaworthy then the ship's owner, and no one else, is liable for damages resulting from that unseaworthiness. *Mahnich v. Southern S. S. Co.*, 321 U.S. 96, 100-01 (1944).

The Defendants argue that Fitzgerald, a seaman, must indemnify Utopia, the ship's owner, for damages sustained from unseaworthy conditions which they say Fitzgerald brought about. This is a misinterpretation of a shipowner's liability under seaworthiness. A shipowner's responsibility to ensure a vessel's seaworthiness is absolute and non-delegable—accordingly, its liability for

unseaworthiness is both strict and direct. *Yamaha*, 516 U.S. at 208. Accordingly, Utopia may not base their indemnity claim on a theory of vicarious liability for unseaworthiness. Regardless of any action or inaction by Fitzgerald, Captain Inglis, or anyone else, once unseaworthiness manifested in the form of an unmanned helm, Utopia became strictly and directly liable for the resulting damages. *Mahnich*, 321 U.S. at 104-05.

Nor may the Defendants claim vicarious or non-negligent liability through Jones Act negligence. According to the Jones Act, a maritime employer has a duty to provide their employees with a reasonably safe place to work. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977).[1] A seaman has a cause of action in negligence under the Jones Act against his employer for personal injuries which the employer or its agents cause, and which occur during the course of employment. 46 U.S.C. § 30104; *Skye v. Maersk Line, Ltd. Corp.*, 751 F.3d 1262, 1265 (11th Cir. 2014). A finding of contributorily negligence does not bar the seaman from bringing a claim, but it will proportionately reduce damages between the employer and the injured seamen. *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1544 (11th Cir. 1989).[2] The Jones Act eradicated the English fellow servant defense which shielded employers from liability upon a finding that it was a fellow servant of the employee, not the employer, who caused the injury; with the Jones Act's passage employers became liable for the negligence of their agents as well. *Mahnich*, 321 U.S. at 101, 102. And, finally, a seaman's duty is to carry out the captain of the vessel's orders, rather than to first attempt to assess whether the order creates danger. *Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir. 1974).

In other words, while Fitzgerald could potentially be found contributorily negligent with regards to his own damages, he cannot be liable for contribution to Utopia under the Jones Act. *Mahnich*, 321 U.S. at 101, 102. Nor can he be found contributorily negligent for following Captain Inglis's orders, as was his duty. *Williams*, 497 F.2d at 73.

Therefore, Utopia has not presented any viable theory under which it may recover against Fitzgerald: it may not seek indemnity under maritime law because its liability for unseaworthiness is direct and absolute, and it may not recover under the Jones Act both because it is once again the direct tortfeasor, the fellow-servant doctrine is no longer applicable, and Fitzgerald had a duty to follow the

---

[1] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Additionally, under binding Fifth Circuit precedent, a seaman "may not be contributorily negligent for carrying out orders that result in his own injury, 'even if he recognizes possible danger.'" *Id.* (quoting *Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir. 1974)).

captain's orders.[3] Accordingly, the Court must dismiss Utopia's counterclaims. The Court further denies Utopia's request to amend its counterclaim because that request is inappropriately raised in response to the motion to dismiss and not by separate motion. *See Newton v. Duke Energy Florida, LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

### 4. Conclusion

For the reasons stated above, the Court **grants** Intervening Plaintiff Fitzgerald's motion to dismiss (**ECF No. 60**) and **dismisses** counts one and two of the Defendants'/Counter Plaintiffs' claims against Intervening Plaintiff Fitzgerald without prejudice.

**Done and ordered** in Miami, Florida, on May 26, 2023.

Robert N. Scola, Jr.
United States District Judge

---

[3] The Court makes no determination at this time regarding Fitzgerald's potential contributory negligence with regards to his own claims against Utopia because that issue is not properly before the Court.