UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-23847-CIV-SCOLA/GOODMAN

ERIC WARD,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829,
MMSI No.339328000, her engines, tackle,
gear, appurtenances, etc., *in rem*,
UTOPIA YACHTING LLC, *in personam*,

    Defendants.

_____/

**REPLY IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE [DE 146]**

Defendants, the M/Y UTOPIA YACHTING and UTOPIA YACHTING LLC, by and through their undersigned counsel, hereby file this, their consolidated Reply in Support of Defendants' Motions in Limine [DE 146] and in Opposition to Plaintiffs' Response Thereto [DE 150] and state as follows:

    I.  **Defendants' Motion in Limine to Exclude Testimony and Evidence on Liability Subsequent to Publications of the Defendant's Admission of Liability [previously filed at DE 120] in conjunction with Defendants Conditional Admission of Liability as to the December 23rd Collision Contingent on the Granting of Incorporated Motion in Limine [DE 119].**

Plaintiffs restate and adopt their arguments as filed in the Motion in Limine to Exclude Testimony and Evidence on Liability Subsequent to Publications of the Defendant's Admission of Liability [DE 120] and their Reply in Support Thereof [DE 135].

    II.  **Defendants' Motion in Limine to to Preclude Introduction of or Reference to Unauthenticated Medical Records (Exempting only Expert Witnesses Reliance Thereon)**

Although the Defendants concede (as stated in their underlying Motion) that Courts normally handle objections of authenticity at trial on a document-by-document basis as the document is sought to be introduced into evidence, in the instant case the Plaintiffs have failed to authenticate the medical records of forty-eight (48) different medical providers as required under the Federal Rules of Evidence and, therefore, the Defendants are respectfully seeking a determination by the Court that any unauthenticated medical records are inadmissible at trial unless the authoring physician or provider appears live at trial to authenticate them, thereby laying the proper foundation for their admissibility.

As set forth in the Eleventh Circuit's decision in <u>Calhoun v. Walmart Stores E., LP</u>, 818 F. App'x 899, 904 (11th Cir. 2020) (upholding the trial court's decision to exclude the Plaintiff's unauthenticated medical records where there was no evidence authenticating the records under Rule 901 and no testimony establishing that the documents constituted business records under Rule 803(6)), the Federal Rules of Evidence require medical records to be properly authenticated in order to be admissible at trial and this Honorable Court is vested with the discretion to preclude medical records not properly authenticated from admission at trial:

> "Rule 901 provides that to authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), such as "[t]estimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1). Though Rule 901 "require[s] only enough evidence that a jury could have reasonably concluded that a document was authentic," United States v. Williams, 865 F.3d 1328, 1343 (11th Cir. 2017) (citation and internal quotation marks omitted), Ms. Calhoun provided no evidence whatsoever to demonstrate that the documents were what she claimed they were—namely, records of services for injuries related to the incident at Walmart.
>
> We also note that the medical bills and records constituted hearsay to the extent that they contained doctors' out-of-court statements which Ms. Calhoun offered for their truth. See Fed. R. Evid. 801(c). Ms. Calhoun could not show that they qualified under the business records exception in Rule 803(6) because she did not present any witness who was "knowledgeable about the procedures used to create" the records. In Re Int'l Management Assocs., LLC, 781 F.3d 1262, 1268 (11th Cir. 2015); United States v. Garnett, 122 F.3d 1016, 1018–19 (11th Cir. 1997) ("Fed. R. Evid. 803(6) requires the testimony of a custodian or other

qualified witness who *905 can explain the record-keeping procedure utilized.")."

In the instant case, Plaintiffs did not even attempt to obtain (no much less authenticate) most of the subject medical records themselves. As a result, the unauthenticated medical records in question were largely produced haphazardly in response to HIPAA releases, often without cover sheets or corresponding page numbering.

Certain purported medical records received from Eric Ward's psychiatric treater Sarah Barkley were produced in Word format, with multiple versions of the same record altered a month apart and dated incorrectly. Other unauthenticated medical records were received from the offices of Dr. Kurt Judson and Dr. Ari Cement, who the Defendants also subpoenaed, both for deposition and *duces tecum* for their complete patient files, and who wilfully failed to respond to those subpoenas or appear for their deposition. Finally, a large number of these medical records consist of subjective accounts of psychological complaints that are entirely without authentication.

It follows that the unauthenticated medical records in this case do not contain "*a prima facie aura of reliability*" and, for the avoidance of doubt, Defendants do not admit that any medical records they received from third-parties in response to HIPAA releases are complete or authentic.

As set forth in their underlying Motion, Defendants acknowledge that any physician or provider called to testify may be called upon to authenticate his/her records at trial, with the Defendants reserving their rights to assert any valid objections to the same. However, the Defendants respectfully seek a determination that any unauthenticated medical records are inadmissible at trial unless the authoring physician or provider appears live at trial to authenticate them, thereby laying the proper foundation for their admissibility.

However, Plaintiffs' Response to Defendants' Motion in Limine [DE 150] seems to suggest that Plaintiffs believe that some or all third-party medical records can be admitted at

trial without any authentication from any source associated with the provenance or maintenance of those records, in circumvention of the Federal Rules of Evidence, and that some, if not all, of the Plaintiff's medical records should be admitted at trial without any corroboration of their authenticity. Defendants strongly disagree.

In support of this position, Plaintiffs cite a number of cases in other jurisdictions that are not analogous with the current proceedings at all. In the Southern District of Ohio case cited by the Defendants, *Knapp v. City of Columbus*, allowed the admission of documents on City of Columbus letterhead and stamped by the executive director of a city commission without specific authentication where the same director had testified under oath that she held the position at the time the documents would have been signed and that the fact of her signing them would have been consistent with her role at the time. This is clearly distinguishable from the instant case, where not a single records custodian was deposed and many of the authoring third-party medical providers were either not deposed or failed to appear for deposition. Further, the records received were not certified or produced on official government letterhead.

In the Northern District of George case cited by the Defendants, *Berry v. Lewis Trucking & Grading*, the Court admitted a number of unauthenticated emails received by Lewis Trucking email accounts where all of the emails themselves had the company URL at the bottom, there was deposition testimony consistent with their contents, and the adverse party did not dispute the authenticity of these emails. As set forth above, in the instant case, Defendants challenge the authenticity and completeness of the medical records provided.

In the Western District of Washington case cited by the Defendants, *Jones v. Rabanco, Ltd.*, the Court considered unauthenticated business records when ruling on a summary judgment motion in an employment discrimination matter. Those business records were on U.S. Department of Labor letterhead, had all been bates stamped, and one document contained

indicia specifying the time and date it was faxed. Again, this is simply not analogous with our case.

In this case, the completeness and authenticity of the unauthenticated medical records in question, as haphazardly produced by 48 different medical providers, are not as easily verifiable as a single set of bates stamped documents on official government letterhead. Further these disputed, unauthenticated medical records form the entire basis for the Plaintiffs' claims against the Defendants and, it is respectfully submitted, that the Defendants would be severely prejudiced if they were admitted without properly authentication.

**III.   Defendants' Motion in Limine to Preclude Introduction of Expert Reports (Noting Expert Reports are Recognized Hearsay)**

It appears that the Parties are in agreement that all expert reports are inadmissible hearsay that may only be used at trial to refresh the authoring expert's recollection or for impeachment. See <u>Johnston v. Borders</u>, No. 615CV936ORL40DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018).

However, because it is unclear why Plaintiff's expert Ira Morris has republished pages and pages of other medical treaters records verbatim in his reports, Defendants' respectfully would ask this Honorable Court to clarify that experts will not be permitted read or recite portions of their reports that simply republish unauthenticated medical records authored by other treating physicians or providers verbatim while refreshing their recollection.

This is consistent with Federal Rule of Evidence 612, that requires a witness whose memory has been refreshed to testify from his present recollection, rather than to merely restate the contents of the writing. See <u>Rush v. Illinois Cent. R. Co.</u>, 399 F.3d 705, 718 (6th Cir. 2005) ("*Rule 612 is intended to curb the false memory that might occur when a witness who purports to testify based on a refreshed recollection merely parrots the contents of the writing.*")

**IV.   Defendants' Motion in Limine to Preclude Drs. Judson and Ciment From Testifying Due to Willful Refusal to Comply with Federal Deposition Subpoenas**

Instructive here is the Eastern District of New York decision in <u>Wang v. X B B, Inc</u>., No. 18CV7341PKCST, 2021 WL 3516355, at *1 (E.D.N.Y. Aug. 10, 2021):

> "The authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a non-party for failure to comply with a subpoena is Rule 45(g)." Russell v. Aid to Developmentally Disabled, Inc., No. 12-CV-389 (LDH) (AKT), 2016 WL 11735375, at *2 (E.D.N.Y. June 14, 2016). Under Rule 45(g), "[t]he court for the district where compliance is required ... may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).
>
> A court also may preclude a third-party witness from testifying at trial if that witness fails to appear for a deposition after receiving a subpoena. See, e.g., Harewood v. Braithwaite, No. 09-CV-2874 (PKC) (RML), 2013 WL 5366391, at *4 (E.D.N.Y. Sept. 23, 2013) (precluding a witness from testifying at trial "based on his refusal to be deposed even when subpoenaed"); Lewis v. City of New York, No. 12-CV-4433 (JMF), 2013 WL 6283507, at *2 (S.D.N.Y. Dec. 4, 2013) (precluding a witness from testifying at trial because she "failed to appear for a deposition on a total of six different occasions, proffering a range of different excuses," even after "the [c]ourt expressly warned [the] [p]laintiff that if [the witness] failed to appear for the next deposition ... and did not have good cause for such failure, the [c]ourt 'may well preclude her from testifying at any trial.' "). But preclusion is an "extreme sanction." Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

It is respectfully submitted that the Defendants would be unduly prejudiced if Dr. Kurt Judson and Dr. Ari Cement were permitted to testify at trial, where the Defendants would be be forced to confront their testimony for the first time at trial after each wilfully defied Federal Records Subpoenas for their depositions without adequate excuse. See <u>Harewood v. Braithwaite</u>, No. 09-CV-2874 PKC RML, 2013 WL 5366391, at *4 (E.D.N.Y. Sept. 23, 2013).

As a result of their failures to appear for deposition, the Defendants have been denied the opportunity to examine these providers on their medical opinions and the authenticity of their records. Allowing them to appear at trial and present previously undisclosed expert medical testimony would be an ambush on the Defendants.

It is also respectfully submitted that Dr. Kurt Judson and Dr. Ari Cement's medical records should be precluded from admission at trial where they have not been properly authenticated in accordance with the Rules of Evidence and the Defendants have been denied the opportunity

to examine these witnesses on the contents of those records despite properly serving both witnesses with Subpoenas Duces Tecum for the same.

**V.     Defendants Motion in Limine to Preclude Testimony or Evidence (other than Expert Witnesses) Predicated On or Referring to any Unauthenticated Medical Records, Including any Plaintiff's Reference to their own Medical Records**

Defendants adopt and incorporates their arguments from the prior section regarding unauthenticated medical records. It appears from the Plaintiff's Response [DE 150] that they do not disagree that the Plaintiffs should not be permitted to testify regarding unauthenticated medical records. It is respectfully submitted that Fed. R. Evid. 803(4) hearsay exception only applies to statements made by the Plaintiffs to their treating providers for medical diagnosis or treatment that describes their medical history or their past or present symptoms or sensations, their inception or their general cause and that the Fed. R. Evid. 803(4) hearsay exception does not enable the Plaintiffs to provide testimony about their treatment providers communications to them.

Further, all of the Plaintiffs are lay witnesses. "*A lay witness may only testify to opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.*" United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (citing Fed. R. Evid. 701). Lay witnesses are not permitted to give medical testimony so the Defendants disagree with the Plaintiff's statement that "*Plaintiffs could testify to each record*" once they are authenticated. Therefore, the Defendants respectfully seek a determination from this Honorable Court that the Plaintiff's cannot act as improper conduits for introducing medical testimony by reading or reciting medical records, authenticated or otherwise, prepared by their medical care providers at trial.

### VI. Defendants' Motion in Limine to Preclude Sarah Barkley From Referring To or Relying on Reports Co-Authored by Eric Ward

As the Plaintiff's correctly point out, subsequent to the filing of Defendants' Motion in Limine [DE 146], this Honorable Court has entered an Order [DE 155] denying Defendant's Motion to Strike Sarah Barkley as a witness that ruled on this issue and advised that Defendants may also question Sarah Barkley at trial about Plaintiff Eric Ward's participation in the preparation of her reports. Accordingly, the Defendants have not briefed this issue any further herein.

### VII. Defendants Motion in Limine to Preclude Improper Expert Testimony from Sarah Barkley and any Other Witness Not Properly Designated in Accordance with Rule 26(a)(2)(C)

With respect to Sarah Barkley, it appears from the Plaintiffs' Response [DE 150] that the Parties are in agreement that Ms. Barkley has only been disclosed as and will only testify as a lay witness at trial.

A lay witness may only testify to opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702. United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (citing Fed. R. Evid. 701). **"[T]he ability to answer hypothetical questions is the essential difference between expert and lay witnesses."** Id. (alteration and quotation marks omitted). Huddleston v. United States No. 2:19-CV-14048, 2019 WL 6879741, at *1 (S.D. Fla. Dec. 17, 2019) (granting summary judgment where the plaintiff had no expert witness to testimony about the causation of his injuries).

Instructive here is the Southern District decision in O'Brien v. NCL (Bahamas) Ltd., No. 16-23284-CIV, 2017 WL 8315925, at *3 (S.D. Fla. Aug. 25, 2017):

> "A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff." Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1316 n.23 (11th Cir. 2014). (citing United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) ). "But 'a treating doctor ... is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation.' " Id.
>
> …
>
> [T]he disclosures that must be made for a treating physician depend on the nature of the testimony he or she will give. Unless the treating physician is going to be limited to testifying about facts in a lay person capacity, the physician must be disclosed as an expert and must provide either the summary disclosures or an expert report. Whether the treating physician must file a written report or is subject only to summary disclosures depends on the role of the expert. If the treating physician's expert opinions stay within the scope of treatment and diagnosis, then the physician would not be considered "retained" to provide expert testimony and only summary disclosures would be needed. But if a treating physician is going to offer opinions formed outside the course of treatment and diagnosis, then as to those further opinions the physician is being used in a "retained expert" role and the Rule 26(a)(2)(B)'s report requirement will apply to the extent of that further testimony. It is not sufficient for the summary disclosures to mention that the treating physician is going to offer these additional expert opinions.
>
> *4 The types of disclosures made will then determine the scope of testimony actually allowed. Treating physicians disclosed only as lay witnesses may testify only to lay facts. Treating physicians for whom summary disclosures are provided may opine on matters relating to treatment and diagnosis. If the treating physician files an expert report, then the treating physician may testify as a retained expert to matters that go beyond treatment and diagnosis.
> 202 F. Supp. 3d at 1365 (quoting Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 26).
>
> Thus, the question becomes whether Plaintiff disclosed his treating physicians as treatment and diagnosis "lay" witnesses, or, alternatively expert witnesses (or some combination thereof). See id."

Unlike the baseless assertions in Plaintiffs' Response [DE 150], Defendants are not seeking to preclude Sarah Barkley from testifying about her treatment of Mr. Ward entirely. Defendants are strictly seeking a determination that Ms. Barkley and all other treatment providers who were not disclosed as experts will be limited to testifying as lay witnesses about lay facts.

It is also respectfully submitted that Fed. R. Evid. 803(4) hearsay exception only applies to statements made by the Plaintiffs to their treating providers for medical diagnosis or treatment that describes their medical history or their past or present symptoms or sensations, their inception or their general cause. It does not mean that all treatment providers get to testify about every single thing the Plaintiff ever told them.

WHEREFORE, for the reasons specific to each of Plaintiff's Motions in Limine, Defendant's respectfully request that each of their Motions in Limine be Granted, recognizing that any one or all could be reconsidered at Trial.

Dated this 8th day of August 2024.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on August 8, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

MOORE & COMPANY, P.A.
Kavan Vartak, Esq.
Michael T. Moore, Esq.
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: kvartak@moore-and-co.com
Email: michael@moore-and-co.com
**Attorneys for Plaintiffs**

Campbell Johnston Clark, LLP
2600 Douglas Road
Suite 508
Coral Gables, FL  33134
Tel. : 786-204-3784
Email: neil@cjclaw.com
Email: chase@cjclaw.com
Email: cindy@cjclaw.com
Email : nadia@cjclaw.com

By:   ____/s/    Neil    Bayer_____
    Neil Bayer, Esq.
    Fla. Bar No.: 615684

    Chase Alexandra Jansson, Esq.
    Fla. Bar No.: 1002265