United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eric Ward, and others, Plaintiffs,<br><br>v.<br><br>M/Y Utopia IV, Official No. 1305829, MMSI No. 339328000, her engines, tackle, gear, appurtenances, etc., *in rem*, and Utopia Yachting, LLC, *in personam*, Defendants. | Civil Action No. 22-23847-Civ-Scola<br><br>**In Admiralty** |

### Omnibus Order

Before the Court are the Plaintiffs' motion *in limine* (ECF No. 154), Plaintiffs' Renewed Motion for Leave to Permit Fact Witness Sarah Barkley to Testify Remotely at Trial (ECF No. 220), the Defendants' *Daubert* Motion (ECF No. 146), the Defendants' motion *in limine* (ECF No. 147), and the Defendants' Motion to Strike Exhibit List (ECF No. 230). For the reasons that follow, the Court **grants in part and denies in part** the Plaintiffs' motion *in limine* (**ECF No. 154**), **grants** the Plaintiffs' Renewed Motion for Leave to Permit Fact Witness Sarah Barkley to Testify Remotely at Trial (**ECF No. 220**), **denies** the Defendants' *Daubert* Motion (**ECF No. 146**), **grants in part and denies in part** the Defendants' motion *in limine* (**ECF No. 147**), and **denies without prejudice** the Defendants' Motion to Strike Exhibit List (**ECF No. 230**). The Plaintiffs' motion *in limine* (**ECF No. 145**) is **mooted** by the Plaintiffs' amended motion *in limine* (ECF No. 154).

1. **Plaintiffs' Renewed Motion for Leave to Permit Fact Witness Sarah Barkley to Testify Remotely at Trial**

The parties agree that because of Hurricane Helene and its impact on Ms. Barkley's hometown, Ms. Barkley may testify remotely. Therefore, because of Hurricane Helene and Ms. Barkley's husband's travel, Ms. Barkley may testify remotely at trial for the two-week trial period commencing on October 7, 2024.

2. **Plaintiffs' Omnibus motion *in limine* (ECF No. 154)**

In its motion *in limine*, the Plaintiffs seek to exclude evidence of various pieces and/or types of evidence, as described further below.

**A. References to Past Criminal Records (Motion *in Limine* #1)**

The Plaintiffs first seek to exclude any reference to past arrest records of any of the Plaintiffs. The Plaintiffs explain that though no Plaintiffs have been convicted of any crimes, the Defendants have referred to some of their arrest records in the past. (ECF No. 154, at 2.) The Plaintiffs argue that arrest records are irrelevant to the remaining issues at trial: the Defendants' damages for the negligence and unseaworthiness accounts, liability and damages for Plaintiff Wennberg's other incidents, and liability and damages for the Defendants' alleged failure to pay maintenance and cure. (*Id.* at 2-3.) The Plaintiffs further argue that any reference to arrest records is unduly prejudicial.

The Defendants believe that this subject is a "non-issue" unless it is discovered that any of the Plaintiffs has been convicted of a crime and was therefore untruthful in an interrogatory or deposition. (ECF No. 152, at 1-2.) Thus, it seems as though the Defendants do not intend to raise the fact of an arrest (rather than a conviction) at trial. However, the Defendants note that Intervening Plaintiff Samuel Parrot was in a high-speed automobile accident several months after his injuries in which he was the driver; took himself out of the car; and left his friends at the scene of the accident. (*Id.* at 2.) The Defendants believe this incident is "relevant to the extent of the injuries he claims as a result of the Utopia collision, both physical and mental and this is fair and valid cross examination although linked to a possible crime." (*Id.*)

The Plaintiffs reply that though they think Plaintiff Parrot's ability to drive is irrelevant to the issues here, it does not seek its exclusion through a motion *in limine*. (ECF No. 158, at 2.) However, the Plaintiffs believe that the Defendants should be prohibited under FRE 401 and 402 from "continuing that discussion or questioning into his subsequent arrest and the criminal proceedings as being irrelevant and improper use of a past criminal proceedings [sic] as improper impeachment." (*Id.*)

At the hearing, the parties clarified that the one issue with respect to criminal records was indeed Samuel Parrot's automobile accident which occurred after the incident in issue in this case.

This motion *in limine* is **granted in part** and **denied in part.** The Defendants may inquire into Mr. Parrot's ability to leave the accident on foot, and whether he suffered any emotional impact from that automobile accident.

Such questions are relevant to the cause and extent of his physical and mental injuries—mainly his ankle and foot injuries as well as his post traumatic stress disorder—that he alleges were the result of the incident in issue in this case. The Defendants may not inquire into any arrest or investigation in connection with the automobile accident. Such topics are irrelevant as well as unduly prejudicial.

### B. All Past Medical Conditions, Treatment, and Medication (Motion *in Limine* #2)

The Plaintiffs also believe that the Defendants should be precluded from referencing and inducing testimony on the Plaintiffs' past medical history that is "not directly related to the injuries suffered during the collision incident" as irrelevant and/or unduly prejudicial. (ECF No. 154, at 3-4.) The Plaintiffs believe that "evidence of past medical history or illness or injuries not specifically related to the area of the body injured during the collision is irrelevant under Rule 402." (*Id.*)

The Defendants object, stating that some past medical history may be relevant. (ECF No. 152, at 2.) By way of example, the Defendants state that Plaintiff Wennberg "was treated for the identical back injuries he claims in this lawsuit eight months before the collision as documented by his treating" orthopedist; "Samuel Parrot was hospitalized for suicidal ideologies before the collision while claiming deep depressive thoughts post collision which he described as PTSD;" and "Ryan Fitzgerald was also treated for the same injury/condition which he treated for subsequent to the collision and which he attributes to the collision." (*Id.* at 2-3.) The Defendants argue that "[t]here is nothing whatsoever prejudicial within the scope of Rule 403 which would serve to exclude these medical treatments a secret from the jury." (*Id.*) The Defendants do clarify that they will not seek testimony on "gynecological appointments for any female crew member," or any injury unrelated to and independent from the incidents at issue in the case. (*Id.* at 3.)

In their response, the Plaintiffs state that they want to exclude references to past medical conditions "not directly related to the injuries suffered" during the incident(s); they also state that if the Court does not grant the motion *in limine*, the Court should decide these issues at trial as they present themselves. (ECF No. 158, at 2.)

At the hearing, the Defendants clarified that they seek to inquire into the past medical conditions of Fred Wennberg with respect to his back condition and Samuel Parrot with respect to his suicidal ideologies that occurred a few years before the incident.

This motion *in limine* is **granted in part by agreement** and **denied in part.** The Defendants may inquire into these past medical conditions as they are relevant to their alleged injuries from the incidents at issue in this case. At the hearing, the Defendants represented that they would not inquire into any of Mr. Ward's past medical conditions.

### C. Intervening Plaintiff Ryan Fitzgerald's Fault and/or Contributory Negligence, and Hiding of Injuries (Motion *in limine* #3)

Intervening Plaintiff Ryan Fitzgerald's claims have been settled. The parties agree that this motion *in limine* is **MOOT**.

### D. Improper Collusion (Motion *in limine* #4)

The Plaintiffs next want to prevent the Defendants from arguing at trial that the Plaintiffs colluded or plotted the lawsuit. (ECF No. 154, at 8.) The Plaintiffs believe such evidence is irrelevant and unduly prejudicial. (*Id.*) They note that the Defendants' admission of liability, if granted by the Court, demonstrates that each Plaintiff had a right to sue the Defendants and any evidence of collusion has no probative value to any remaining issues. (*Id.* at 9.) The Plaintiffs also argue that there is no evidence that such collusion occurred. (*Id.*)

The Defendants disagree and argue that "the fact that seven people residing in six different parts of the country and Canada all found their way to Plaintiff's counsel is more than a mere coincidence and the jury is certainly free to draw whatever inferences they wish from this fact." (ECF No. 152, at 4-5.) The Defendants believe that the Plaintiffs' motion *in limine* is improper and such objections should be handled on a case-by-case basis at trial. (*Id.* at 5.)

In their Reply, the Plaintiffs state that the Defendants have not pointed to any evidence of collusion, and moreover, such evidence has no bearing on the issues in the case. (ECF No. 158, at 3.) The Plaintiffs also deny the Defendants' assertions regarding their medical records, and also believe the Defendants' assertions are "irrelevant to this Motion." (*Id.* at 4.)

At the motions *in limine* hearing, the Defendants' counsel represented that it would not present evidence that supports collusion between the Plaintiffs. Therefore, the motion *in limine* is **GRANTED** by agreement.

### E. Plaintiff Eric Ward's Communications with the Defendants' Counsel (Motion *in limine* #5)

The Plaintiffs next seek to exclude references to Plaintiff Ward's communications with the Defendants' counsel prior to the retention of the Plaintiffs' current counsel, July 20, 2022. (ECF No. 154, at 9-10.) The Plaintiffs argue that Ward communicated with the Defendants' counsel prior to this date to receive wage and cure benefits, "meaning he was essentially attempting to settle and negotiate his claims." (*Id.* at 10.) The Plaintiffs thus argue that such communications are inadmissible under FRE 408. (*Id.*)

Alternatively, the Plaintiffs believe such communications are irrelevant and unduly prejudicial because the communications "would not have any tendency to prove a fact of whether Plaintiff Ward was injured or whether he was owed cure and wages." (*Id.*) And if the Defendants admit liability before trial, such communications "would be even more irrelevant as they have no bearing on the amount of damages." (*Id.*) In sum, the Plaintiffs believe that "[a]ny attempts by the Defendants to argue that Plaintiff Ward showed poor character traits, such as showing anger or resentment during any of the phone calls" would be inadmissible under Rule 404 as well as being unduly prejudicial. (*Id.*)

At the hearing, the Defendants represented that they would question Mr. Ward on two subjects: (1) as related to his demand for treatment from the Defendants, that the Defendants' counsel asked for his medical records and Mr. Ward refused to provide them, and (2) relatedly, that Mr. Ward told his medical providers not to provide his medical records to the Defendants' counsel. Such communications are relevant to Mr. Ward's maintenance and cure claims. The Defendants may inquire into these subjects.

Therefore, this motion *in limine* is **denied**.

### F. Character Evidence (Motion *in limine* #6)

Finally, the Plaintiffs believe that all references to the character of the Plaintiffs is inadmissible as irrelevant, unduly prejudicial, and improper character evidence under Rule 404(a)(1). (ECF No. 154, at 11-12.)

The Defendants respond by pointing out that the Plaintiffs' motion references no examples of what improper character evidence might be, and that "this Motion in Limine must be denied as a matter of law because it is so vague, that no response can be prepared without literally guessing what the Motion seeks to encompass." (ECF No. 152, at 8.)

The Plaintiffs reply by citing to the Defendants' own response, in which the Defendants guess that the Plaintiffs may be referring to "Instagram Posts which contradict illnesses which certain Plaintiff's [sic] have made to their treaters," Samuel Parrot's car accident in which he allegedly drove recklessly and left his friends at the scene; and one of the Plaintiff's "serial abuse conduct." (ECF No. 158, at 4 (citing ECF No. 152, at 8).) According to the Plaintiffs, these are character attacks that should be excluded under Rules 401, 403, and 404. (*Id.* at 4-5.)

At the hearing, the Defendants clarified that they intend to question Mr. Ward on his, as the Defendants described it, continuous and abusive conduct toward the medical administrator and his instructions to his providers to not share his medical records. Such topics are relevant to Mr. Ward's maintenance and care claim, for similar reasons described in 2.E. above. The Defendants may ask about these subjects at trial.

The Defendants also intend to question Mr. Parrot on his Instagram posts, posted after the date of the incident at issue in this case, in which he is downhill skiing and working out in the gym. Such topics are relevant to the extent of Mr. Parrot's alleged injuries. The Defendants may ask about these subjects at trial.

The Defendants may not ask questions that relate to the Plaintiffs' general character. Therefore, this motion *in limine* is **granted in part** to the extent the Defendants' attempt to introduce evidence related to the Plaintiffs' character generally, but **denied in part** to the extent outlined above with respect to Mr. Ward and Mr. Parrot.

3. **Defendants' Omnibus Motion *in Limine* (ECF No. 146)**

In their motion *in limine*, the Defendants likewise seek the exclusion of certain categories of evidence, as described in more detail below.

A. **Unauthenticated Medical Records and Testimony Based Thereon (Motions *in Limine* B & E)**

The Defendants first seek to exclude unauthenticated medical records from being introduced at trial, except as relied upon by expert witnesses. The Defendants argue that with limited exceptions, various medical records remain unauthenticated and as such are inadmissible. (ECF No. 146, at 3-4.) Based on the arguments presented at the hearing, it appears that the Plaintiffs may not be able to authenticate various records, while they may be able to authenticate others. Because the court must "exclude[] evidence on a Motion in Limine only

if the evidence is clearly inadmissible for any purpose," the Court will determine authentication issues exhibit-by-exhibit at trial. *See Lopez v. Allstate Fire & Cas. Ins. Co.*, 2015 WL 11216748, at *1 (S.D. Fla. Oct. 27, 2015) (Cooke, J.).

The same applies for the Defendants' motion to exclude any lay or party witnesses from testifying on matters predicated on unauthenticated medical records. (ECF No. 146, at 8.) Without more specificity, the Court cannot determine pre-trial whether such statements are "clearly inadmissible for any purpose." *Lopez*, 2015 WL 11216748, at *1.

Therefore, these motions *in limine* are **denied** and the Court reserves ruling on such objections until they are raised in the context of trial testimony.

### B. Introduction of Expert Reports (Motion *in Limine* C)

The Defendants next seek to exclude the introduction of the parties' expert reports because while they properly rely on unauthenticated hearsay, the reports are "rife with hearsay and accordingly must be excluded as a matter of law." (ECF No. 146, at 5.) Additionally, allowing the expert reports to be introduced would essentially allow unauthenticated medical records to be introduced as evidence. (*Id.*) As an example, the Defendants assert that the Plaintiffs' expert, Ira Morris, relied on unauthenticated medical records and thus the report could be used as "a potential vehicle for the publication of inadmissible hearsay." (*Id.*)

The Plaintiffs state that they do not intend to admit the reports into evidence because they are hearsay, though the Plaintiffs note that reports may be used for other purposes such as refreshing recollection or impeachment. (ECF No. 150, at 4.)

In their reply, the Defendants request that the Court "clarify that experts will not be permitted [to] read or recite portions of their reports that simply republish unauthenticated medical records authored by other treating physicians or providers verbatim while refreshing their recollection." (ECF No. 159, at 5.)

At the hearing, the parties agreed that the expert reports would not be entered into evidence. This motion *in limine* is therefore **granted by agreement.**

### C. Testimony of Drs. Judson and Ciment (Motion *in Limine* D)

The Defendants next seek to preclude Drs. Judson (primary treating physician for Samuel Parrot) and Dr. Ari Cement (treating physician for Fred

Wennberg) from testifying due to their refusal to comply with their deposition subpoenas. (ECF No. 146, at 7.) The Defendants argue that the Plaintiffs' counsel "did nothing to persuade these key witnesses that they must appear and are, therefore, complicit in their conscious decisions not to appear." (*Id.*)

The Plaintiffs do not believe that failure to sit for a deposition is grounds for complete exclusion, and state that the doctors are third parties not under their control. (ECF No. 150, at 4.) The Plaintiffs also note that the Defendants did not make any attempts under FRCP 45(g) to compel the deposition of Drs. Judson and Ciment. (*Id.* at 4-5.) Under Rule 45, the Defendants failed to show, by clear and convincing evidence, why "contempt, civil fines and penalties, or striking, limiting, or prohibiting their testimony is appropriate under the circumstances." (*Id.* at 5-6.) The Plaintiffs also contend that the Defendants have not shown how they were prejudiced by the doctors' noncompliance with the subpoena, or how they (the Defendants) would be prejudiced by trial given the chance to cross-examine the experts at trial. (*Id.* at 6.)

Finally, the Plaintiffs believe that the doctors have the right to explain to the Court why they did not comply with the subpoenas. (*Id.* at 7.) For example, Dr. Judson explained through counsel that he did not have to comply with the deposition subpoenas because it required his presence beyond the 100-mile limit of Rule 45(c)(1). (*Id.* at 7.)

In their reply, the Defendants contend that they will be prejudiced by the doctors' failure to appear for depositions because "the Defendants have been denied the opportunity to examine these providers on their medical opinions and the authenticity of their records." (ECF No. 159, at 6.) Moreover, the Defendants seek exclusion of the doctors' medical records "where they have not been properly authenticated in accordance with the Rules of Evidence and the Defendants have been denied the opportunity to examine these witnesses on the contents of those records . . . ." (*Id.* at 6-7.)

At the hearing, the Plaintiffs represented that they will not call Drs. Judson and Parrot to testify. Therefore, this motion *in limine* is **denied** as moot.

### D. Sarah Barkley's Testimony (Motion *in Limine* F)

The Defendants seek to exclude Ms. Barkley's testimony because her reports were, the Defendants alleged, drafted in part by Mr. Ward. Specifically, they believe that her "testimony must, as a matter of law, be restricted, and her reports excluded in their entirety due to Mr. Ward's assistance in their drafting." (ECF No. 146, at 9.)

The Plaintiffs allege that the Defendants do not provide any case law or citation that shows that Dr. Barkley's testimony should be excluded, and that

"[a]t worst, any weaknesses, inaccuracies or contradictions in Barkley's report and recitation of the facts" goes towards the "credibility and a [sic] weight of the evidence issue for the jury to consider . . . ." (ECF No. 150, at 8.)

At the hearing, the parties discussed two pieces of evidence related to Ms. Barkley's testimony: (1) her contemporaneous notes/treatment summary records of her sessions with Mr. Ward, and (2) a more fulsome report prepared by Ms. Barkley in anticipation of litigation. This motion *in limine* is **granted in part** and **denied in part**. Ms. Barkley may testify with respect to her contemporaneous notes/treatment summary records but may not testify with respect to the more detailed report prepared in anticipation of litigation.

### E. Testimony Not Properly Designated Under Rule 26(a)(2)(C) (Motion *in limine* G)

The Defendants believe that the Plaintiffs' treating physicians and/or healthcare providers were not properly disclosed under FRCP 26(a)(2)(C) and thus should be precluded from testifying.

The Defendants focus on Sarah Barkley, and state she was not properly disclosed as an expert. (ECF No. 146, at 10.) They also argue that even if she were properly disclosed as an expert, she is not qualified and "her testimony must be further restricted to her treatment modalities and only her treatment modalities, as well as Mr. Ward's prognosis." (*Id.* at 12.)

At the hearing, the Plaintiffs represented that Ms. Barkley, and the other medical providers not designated as experts, would not testify as to the cause of the Plaintiffs' medical conditions. Therefore, Ms. Barkley and any other medical providers would not be testifying as experts. This motion *in limine* is **denied**.

### 4. Defendants' *Daubert* Motion

The Defendants next seek to exclude the testimony of Ira Morris and Oscar Padron for failure to meet the minimum standards of expert testimony. The Defendants also seek to exclude the testimony of Sarah Blackley and any other nondisclosed expert witnesses; however, the Defendants repeat the arguments set forth in their omnibus motion *in limine* above and thus the arguments will not be repeated here.

Ira Morris is the Plaintiffs' vocational rehabilitation and life care plan expert, and Oscar Pardon is the Plaintiffs' expert on economics. The Defendants argue that Ira Morris used an unreliable methodology because he "relied heavily on Mr. Ward and Mr. Wennberg's accounts of the facts

pertaining to them without independently verifying the same when formulating his life care plan." (ECF No. 147, at 9-10.) Moreover, he relied on his own summaries of private telephone conversations he had with treating medical professionals in formulating his opinions, though he admitted he lacks the medical knowledge to evaluate the medical findings. (*Id.* at 10.) Therefore, according to the Defendants, "Mr. Morris attempted to act as a conduit for inadmissible medical testimony by republishing large sections of unauthenticated medical records verbatim into his reports." (*Id.*)

Moreover, the Defendants point to the fact that Mr. Morris only met with Ward and Wennberg on FaceTime or telephone; based his conclusions regarding Mr. Ward's wages and salary on an unsigned contract that were not accurate and did not review Mr. Ward's tax returns or that Mr. Ward reported that he did not have sufficient income to file taxes "in reaching his conclusions regarding Mr. Ward's pre-injury wage earning capacity; included medical cure expenses that have already been paid by the Defendants; and for Mr. Wennberg, did not include in his life care plan payments Mr. Wennberg receives from Medicare and his past earnings. (*Id.* at 3-4.)

With respect to Oscar Pardon, the Defendants allege that his methodology is likewise unreliable because it is based almost entirely on Mr. Morris's conclusions and it was prepared in less than a day. (*Id.* at 5.) According to the Defendants, Mr. Pardon admitted in his deposition that he did not independently verify any information regarding Mr. Ward or Mr. Wennberg's complaints because it was "beyond the scope of what [he] was asked to do," and "he simply accepted and quantified the opinions of Ira Morris." (*Id.* at 5.)

With respect to Mr. Morris, the Plaintiffs argue that his methodology was reliable because it adhered to the Standards of Practice for Life Care Planners, a peer-reviewed manual prepared by the International Academy of Life Care Planners, and the RAPEL Method, also a peer-reviewed and widely accepted method.. (ECF No. 151, at 7.) The Plaintiffs also note that Mr. Morris: (1) relied only on materials that were in his possession and obtained through interviews; (2) used data from industry-specific sources in assessing Mr. Ward's loss of earning capacity; and (3) relied on health recommendations from the parties' independent providers that were provided with "signed verifications attesting to the summaries of information and analyses they provided in support of Morris's opinions and conclusions." (*Id.* at 8.) Lastly, the Plaintiffs believe that Mr. Morris's testimony would be helpful to the jury in evaluating Ward and Wennberg's damages because future planning needs, associated costs, and future earning capacities involve issues that the average lay person does not understand. (*Id.* at 9.)

With respect to Mr. Padron, the Plaintiffs argue that when quantifying Mr. Morris's conclusions, Pardon used widely accepted standard practices such as using the applicable interest rates, growth rates, discount rates, inflation rates, and life expectancy data. (*Id.* at 10-11.) He also relied on reputable publications, including those that were peer-reviewed. (*Id.* at 11.) Moreover, his methodology was consistent with the standards of the Association of Forensic Economics and the American Institute of CPAs. (*Id.*) The Plaintiffs note that courts have found methodologies similar to Padron's reliable, and that Judge Bloom in the Southern District of Florida has found Padron, when using the same methodology he used here, to be reliable. (*Id.* at 11-12 (citation omitted).) The Plaintiffs also contend that Mr. Padron's testimony would be reliable because the data and methods he used are complex in a way such that an average lay person would not understand. (*Id.* at 12-13.)

The Plaintiffs also dispute various contentions made by the Defendants. The Plaintiffs first note that Mr. Morris met via video conference with Mr. Wennberg (not just over the phone); Mr. Morris relied on market data in addition to Mr. Morris's contract; Mr. Morris did not provide causation opinions; Morris's reports do not include paid cure expenses or expenses incurred after Ward or Wennberg reached their Maximum Medical Improvement; collateral sources such as Medicare are not considered when making life care plans; Mr. Ward's tax returns were not necessary because Morris relied on labor market data; and with respect to Wennberg, Morris never undertook an earning capacity assessment. (*Id.* at 13-16.)

In their reply, the Defendants do not dispute that the experts are qualified. They contend that Mr. Morris should be precluded from providing any medical or liability testimony. (ECF No. 160, at 2-3.) They maintain that Mr. Morris used an unreliable methodology because in addition to the reasons cited in the original motion, he relied on an incomplete record. (*Id.* at 3-4.)

As to Mr. Padron, the Defendants maintain that his methodology was unreliable (and therefore not helpful) because he exclusively relied on Morris's unreliable findings. (*Id.* at 5.)

The Court finds that the experts are qualified and their methodologies reliable. Therefore, their testimony will be helpful to the jury. The Defendants may cross-examine the experts on any perceived deficiencies. The Defendants' *Daubert* motion is **denied**.

### 5. Defendants' Motion to Strike

The Defendants also seek to strike the Plaintiffs' exhibit list because it was submitted after the deadline and without conferring with the Defendants.

(ECF No. 230, at 3.) This motion is **denied without prejudice.** The Plaintiffs must send their proposed exhibits to the Defendants, in .pdf form, by Friday, October 4, 2024. The Defendants shall have until Tuesday, October 8, 2024, to renew their motion to strike, if they deem necessary.

### 6. Proposed Stipulation and Jury Instructions Related Thereto

The Court defers ruling on the proposed liability stipulation and the jury instructions related thereto (ECF No. 228) until the next hearing, to be scheduled by the Court.

**Done and ordered**, in Miami, Florida, on October 3, 2024.

_____
Robert N. Scola, Jr.
United States District Judge