UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-23847-CIV-BLOOM/GOODMAN

ERIC WARD,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829,
MMSI No.339328000, her engines, tackle,
gear, appurtenances, etc., *in rem*,
UTOPIA YACHTING LLC, *in personam*,

    Defendants.
_____/

## **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants, UTOPIA YACHTING LLC and the M/Y UTOPIA IV, by and through their undersigned counsel, move the Court for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 as follows:

### **Legal Standard for Motions for Judgment as a Matter of Law**

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party. Fed. R. Civ. P. 50(a). A party may move for judgment as a matter of law at any time before the case is submitted to the jury, and must specify the judgment sought and the law and facts that entitle the movant to judgment. *Id.*

Courts should grant motions for judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of

his cause of action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010). On a motion for judgment as a matter of law, the court reviews all of the record evidence and construes the evidence and reasonable inferences drawn therefrom in the light most favourable to the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Pearson v. Deutsche Bank AG*, 2023 WL 3043406, at *4 (S.D. Fla. Apr. 22, 2023). The standard largely mirrors the summary-judgment standard, the difference being that the district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record. *Dupree v. Younger*, 598 U.S. 729, 731-32 (2023).

## **Claims of Eric Ward**

1. On the claims of Eric Ward,

   a. <u>Count I – Failure to Provide Prompt and Adequate Maintenance and Cure</u>

There is no claim for unpaid Maintenance as Mr. Ward admitted that he has received maintenance of $75 per day for every day since he left the yacht after the December 23, 2021 collision (totalling $90,450 to date). In addition, Mr. Ward has admitted that he is not aware of any bills from his medical providers for services conceivably related to injuries he claims he sustained in the collision, noting that it is undisputed that the Defendants have paid $111,267.69 in medical bills to date for Eric Ward. In addition, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Ward on his claim for delayed payment of Maintenance and Cure.

   b. <u>Count I – Failure to Pay Wages</u>

In the absence of a contract, a vessel's obligation to pay wages to an injured seafarer terminates at the end of the voyage. *Nichols v. Barwick*, 792 F.2d 1520, 1524 (11th Cir.1986)(in absence of a contract, seafarer is entitled to wages as part of maintenance and cure only until end

of voyage); *Gheorghita v. Royal*, 93 F. Supp. 2d 1237, 1243 (S.D. Fla. 2000)("When a seagoing employee has no contract or has a contract with no enforceable term of duration, she only is entitled to unearned wages from the time she becomes unfit for duty to the end of that voyage.")

Plaintiff Ward claims that he is entitled to an award of unpaid wages based upon the claim that he has a permanent rotational contract to serve as an ETO on the Utopia IV in perpetuity. However,

> [o]ral contracts are subject to the same 'basic' formation requirements as written contracts, namely, 'offer, acceptance, consideration and sufficient specification of essential terms.' . . . *see also Kolodziej v. Mason*, 774 F.3d 736, 740-41 (11th Cir. 2014). '[A] claim for breach of an oral contract arises only when the parties 'mutually assented to a certain and definite proposition and left no essential terms open.''. . . *see also Glosser v. Vasquez*, 898 So. 2d 1179, 1181 (Fla. 3d DCA 2005) ("The creation of a contract requires that there be a mutual or reciprocal assent to a certain and definite proposition, which is commonly referred to as a 'meeting of the minds.' . . . [T]o create a contract and trigger contractual obligations, the parties must have a definite and distinct understanding, without which there is no assent and no contract." (citations omitted*)); Kolodziej*, 774 F.3d at 744 ("[A]n enforceable contract requires mutual assent as to sufficiently definite essential terms."). "Where essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract." *Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 777 (Fla. 5th DCA 2007) (quoting Dows v. Nike, Inc., 846 So.2d 595, 602 (Fla. 4th DCA 2003)).

*Cruise Am. Associates, LLC v. Absolute Nevada, LLC*, 2024 WL 4881268, at *4 (S.D. Fla. Sept. 24, 2024)

On the evidence he presented, however, no reasonable jury could conclude that he had any contract with the Utopia IV. He admits he has no written contract. Furthermore, it is clear there was no meeting of the minds sufficient to form an oral contract for his employment on the vessel. In view of Mr. Ward's statements in Plaintiff's Exhibits 103, 102 and 101, no reasonable juror could conclude there was an agreement as to essential terms of a contract for employment. Even he did not know the terms.

Ward contends Fred Wennberg hired him on December 7, 2021. On that day, he writes to the recruiter at The Crew Network that the prospect of employment on the Utopia IV, "sound[] good" and that "It sounded like the C.E. hires for the department and I wouldn't also need to speak with the Captain *but we'll see how things go*." Plaintiffs Exhibit 103. On December 10, he writes to the recruiter that he is "[s]till not sure exactly what the wage is." *Id*. On the same day, he tells Ms. Dubois, of Fraser Yachts, that he "believe[s] this was supposed to be a permanent position not a temp position but that can be confirmed." Plaintiffs Exhibit 102. Seven days later, on December 17, he writes again to Ms. Dubois that he "doesn't even know my wage." *Id*. In Exhibit 101, he tells Mr. Wennberg, whom he contends hired him, that he does not know the final details of his agreement to work.

None of these uncertainties are resolved before the December 23, 2021 collision. He did not have a contract that day. Therefore, he was not entitled to unearned wages after he left the yacht on December 26. Defendants are therefore entitled to a judgment as a matter of law on Ward's claim for unearned wages and on his claim for punitive damages for failure to pay unearned wages as part of Maintenance and Cure.

### b. Counts II and III – Claim for PTSD

Defendants are entitled to a judgment as a matter of law on Plaintiff Ward's claim for PTSD because the only individual, a social worker, who testified that he has PTSD, and that the December 23, 2021 collision caused the purported PTSD is not qualified to do so. *See United States v. Crosby*, 713 F.2d 1066, 1076 (5th Cir.1983) (upholding trial court's exclusion of counselor's testimony on the grounds that "only physicians could qualify as diagnostic experts concerning this medical condition [of PTSD]"); *see also Hall v. United Insurance Co*., 367 F.3d 1255, 1261 (11th Cir.2004)(upholding trial court's exclusion of LPC's testimony that the decedent

was incompetent, which rested in part on the plaintiff's failure to show that "counselors with similar training are qualified to render an opinion as to an individual's mental capacity"); *Crocker v. City of Fairhope*, 2005 WL 6217200, at *1 (S.D. Ala. May 4, 2005) ("In every known Eleventh Circuit case in which PTSD was diagnosed, the diagnosis was made by a medical doctor or psychologist"); *Jackson v. Bayou Industries*, 1995 WL 143538 at *1–2 (E.D.La.1995)(an LPC with a masters in psychology, one formal course and one afternoon seminar in Diagnostic Statistical Manuals, no specialization in psychiatric testing and no administration of psychiatric tests to the plaintiff, was "not an expert qualified to diagnose plaintiffs' psychological condition [of PTSD]"); *State v.. Willis*, 888 P.2d 839, 847 (Kan.1995)("for a witness to qualify as an expert on post-traumatic distress disorder and rape trauma syndrome, the witness must possess special training as an expert in that field of psychiatry"; a clinical social worker with a masters degree in social work has no such qualification), modified by statute, *Welch v. State*, 13 P.3d 882, 886–87 (Kan.2000); *State v.. Lee*, 502 A.2d 332, 335 (R.I.1985)("[C]ourts have required that PTSD be proven through expert medical testimony by licensed physicians or psychiatrists.").

In contrast, Social Worker Sarah Barkley testified she had no special training to diagnose PTSD. She stated she had to take two tests to become a certified clinician, one of which "covered PTSD." She testified that she has training in methods of "***treating***" PTSD. And, the "gold standard," she is permitted to bill insurance companies to treat patients with PTSD.

Ms. Barkley testified the bases for her diagnoses of PTSD were Ward's obsessive thinking and lack of desire to engage in previously enjoyable interactions with people and activities. She followed no accepted, formal method of diagnosing PTSD but said "[w]hen certain symptoms are egregious enough to meet minimum diagnostic criteria, there would be no need to further dig into that information."

Even if Ms. Barkley had been properly disclosed as an expert in these proceedings, which she was not, Ms. Barkley's qualifications and methodology would not survive a *Daubert* challenge. No *reasonable* juror could conclude Mr. Ward suffers from PTSD based on Ms. Barkley's testimony alone. The Court should guard against any possibility of that occurring in this case and enter judgment as a matter of law on this claim. *See also Willis v. Royal Caribbean Cruises, Ltd.,* 77 F.4th 1332 (11th Cir. 2023)(holding, in the maritime context, non-readily observable injuries require medical expert testimony to prove causation).

      c. <u>Counts II and III – Claims for Injuries to Shoulder, Hip, Ribs, Spot on Head, and Seizures</u>

Under *Willis v. Royal Caribbean Cruises, Ltd.,* 77 F.4th 1332 (11th Cir. 2023), judgment as a matter of law is unequivocally required on Mr. Ward's claims for damages arising from injuries to his shoulder, ribs, and the spot on his head. These injuries are patently not readily observable and there is no medical testimony that the December 23, 2021 collision caused them. Judgment as a matter of law is also warranted on Mr. Ward's claim based on an injury to his hip as the testimony from was insufficient. Dr. Chen testified that his conclusion that the yacht collision caused Mr. Ward's hip injury was based solely on Mr. Ward's report that he did not have hip pain before the collision and that three months later he (Ward) experienced hip pain,

> Q. And you also provide in this section of the report, again, that it is very likely that the accident on 12/24/21 caused a traumatic labral tear in the left hip. Can I just ask you your factual basis for that statement?
> A. Yeah. He had no pain before it, and he had pain after it.
> Q. And that's even though the pain onset was some more than three months after the event.
> A.Yep. I've done a lot of depositions for this. This is always where people get hung up. Is that how can the pain start then? I don't have a great explanation as to when it starts, but the, the only thing I can identify is that he didn't have pain before the accident, he had pain after. So that's the only thing I can identify as, as why he is having pain.
> Q. I understand, but it has to be based on what the patient tells you subjectively about --

> A. Absolutely.
> Q. -- his pain and when he started to experience it.
> A. Absolutely.
>
> Deposition of Dr. Austin Chen, Pages 20:20-21:16 (read at trial).

Defendants are therefore entitled to a judgment as a matter of law on Ward's claims for injuries to his shoulder, hip, ribs, and what he described as a spot on his head.

Judgment as a matter of law is also warranted on any claim for damages arising from seizures Mr. Ward allegedly sustained in 2022. These seizures are also patently not readily observable and there is no medical testimony that the December 23, 2021 collision caused them. In contrast Physician's Assistant Johnathan Welker who examined him following the incident testified that he could not attribute any causation for the seizures as follows:

> Q.· ·And am I correct, Mr. Ward has not had a second definitive witnessed event?
> A.· ·Not that I'm aware of.
> Q.· ·And we're now, if the original one was on March 27th of '22, it's now more than two years later and there has not been a second incident?
> A.· ·Not that I'm aware of.
> Q.· ·Is there any causation that you're able to attribute the initial seizure event on March 27th of '22 to?
> A.· ·Not at this time.
>
> Deposition of Johanthan Welker Page 12:11-21 (read at trial).

## Claims of Samuel Parrott

On the claims of Samuel Parrott,

    a.  Count I – Failure to Provide Prompt and Adequate Maintenance and Cure

There is no claim for unpaid Maintenance as Mr. Parrott admitted that he received maintenance of $75 per day for every day since he left the yacht after the December 23, 2021 collision until he reached Maximum Medical Improvement. In addition, Mr. Parrott has admitted that he continued to receive maintenance of $75 per day that he was not entitled to after he returned to gainful employment on February 6, 2023 until and including September 30, 2023 (with a

resulting overpayment and retention of $17,100.00 as admitted by Mr. Parrott). Mr. Parrott was paid a total of $48,375.00 in Maintenance and has admitted that the Defendants have paid all of his medical bills for services conceivably related to the injuries he claims he sustained in the collision (in the total amount of $18,039.71). In addition, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Ward on his claim for delayed payment of Maintenance and/or Cure.

      b.     Counts II & III – Claim for PTSD

Defendants are entitled to a judgment as a matter of law on Plaintiff Parrott's claim for PTSD under *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332 (11th Cir. 2023). These injuries are patently not readily observable and there is no medical testimony that the December 23, 2021 collision caused them. In the case of Plaintiff Parrott there has been no evidence presented whatsoever that Mr. Parrott was ever even diagnosed with PTSD. While Parrott says he treated with social worker Vermillion for PTSD. Mr. Vermillion did not testify at trial. There are no records from Mr. Vermillion in evidence. Beyond the word of Mr. Parrott, there is simply no evidence that Mr. Parrott was even diagnosed with PTSD. No *reasonable* juror could conclude Mr. Parrott suffers from PTSD based on his word alone. The Court should guard against any possibility of that occurring in this case and enter judgment as a matter of law on this claim. *See also Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332 (11th Cir. 2023) (holding, in the maritime context, non-readily observable injuries require medical expert testimony to prove causation).

Even if there were testimony or records from Social Worker Vermillion, Mr. Vermillion is a social worker who is not qualified to diagnose PTSD. *See United States v. Crosby*, 713 F.2d 1066, 1076 (5th Cir.1983) (upholding trial court's exclusion of counselor's testimony on the

grounds that "only physicians could qualify as diagnostic experts concerning this medical condition [of PTSD]"); *see also Hall v. United Insurance Co.*, 367 F.3d 1255, 1261 (11th Cir.2004)(upholding trial court's exclusion of LPC's testimony that the decedent was incompetent, which rested in part on the plaintiff's failure to show that "counselors with similar training are qualified to render an opinion as to an individual's mental capacity"); *Crocker v. City of Fairhope*, 2005 WL 6217200, at *1 (S.D. Ala. May 4, 2005) ("In every known Eleventh Circuit case in which PTSD was diagnosed, the diagnosis was made by a medical doctor or psychologist"); *Jackson v. Bayou Industries*, 1995 WL 143538 at *1–2 (E.D.La.1995)(an LPC with a masters in psychology, one formal course and one afternoon seminar in Diagnostic Statistical Manuals, no specialization in psychiatric testing and no administration of psychiatric tests to the plaintiff, was "not an expert qualified to diagnose plaintiffs' psychological condition [of PTSD]"); *State v.. Willis*, 888 P.2d 839, 847 (Kan.1995)("for a witness to qualify as an expert on post-traumatic distress disorder and rape trauma syndrome, the witness must possess special training as an expert in that field of psychiatry"; a clinical social worker with a masters degree in social work has no such qualification), modified by statute, *Welch v. State*, 13 P.3d 882, 886–87 (Kan.2000); *State v.. Lee*, 502 A.2d 332, 335 (R.I.1985)("[C]ourts have required that PTSD be proven through expert medical testimony by licensed physicians or psychiatrists.").

## **Claims of Fred Wennberg**

On the claims of Fred Wennberg,

  a. <u>Count I – Failure to Provide Prompt and Adequate Maintenance and Cure</u>

  i. **First Incident**

Mr. Wennberg has no claim for unpaid Maintenance and Cure, including unearned wages, resulting from the first alleged incident during which he cut his leg due to an unsafe condition in

the engine room that he was responsible for maintaining as Temporary Chief Engineer. Mr. Wennberg was a per diem employee at the time of this incident, as is reflected by his testimony, so he was not entitled to any unearned wages. *See Gheorghita v. Royal*, 93 F. Supp. 2d 1237, 1243 (S.D. Fla. 2000)("When a seagoing employee has no contract or has a contract with no enforceable term of duration, she only is entitled to unearned wages from the time she becomes unfit for duty to the end of that voyage."); *see also Lamont v. United States*, 613 F. Supp. 588, 590 (S.D.N.Y. 1985) (holding that "the right of the seaman to unearned wages continues either through the end of the voyage or the end of the contractual period of employment or until the seaman becomes fit for duty, whichever occurs first."); *see also Blainey v. Am. S.S. Co.*, 990 F.2d 885, 891 (6th Cir. 1993).

    Mr. Wennberg testified that he was not declared unfit for duty and that he only took one (1) week off work after this incident, during which the Defendants paid him his full wage and paid for his flights home.

    After that one (1) week, Mr. Wennberg testified he returned to full-time employment aboard the vessel, and thus cannot recover now. *Pyles v. Am. Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (Seaman cannot remain silent and wait until such time as pleases his convenience to assert claim and then recover for days worked of his own free choice, nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.)

    In addition, Mr. Wennberg has admitted that the Defendants paid for all medical services conceivably related to the cut on his leg sustained in the First Incident. In addition, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Wennberg on his claim for delayed payment of Maintenance and Cure.

### ii. **Second Incident**

Mr. Wennberg has no claim for unpaid Maintenance and Cure, including unearned wages, resulting from the alleged Second Incident where he claims to have hit is head due to an unsafe condition in the engine room that he was responsible for maintaining as Temporary Chief Engineer. Mr. Wennberg testified he did not seek any medical treatment as a result of this incident, was never declared unfit for duty as a result of this incident and did not require any time off work as a result of it. *Pyles v. Am. Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (Seaman cannot remain silent and wait until such time as pleases his convenience to assert claim and then recover for days worked of his own free choice, nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.) There is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Wennberg on his claim for Maintenance or Cure, or delay thereof, as a result of this incident.

### iii. **Third Incident**

Mr. Wennberg has no claim for unpaid Maintenance and Cure, including unearned wages, as a result of the December 23, 2021 collision, noting that his claimed back injury was diagnosed by Dr. Munoz 7 months before the collision and his hip condition 8 months after the collision (bother degenerative diseases confirmed by Dr. Munoz). Mr. Wennberg testified that he returned to work immediately following the collision and that he was not declared unfit for duty. *Pyles v. Am. Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (Seaman cannot remain silent and wait until such time as pleases his convenience to assert claim and then recover for days worked of his own free choice, nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.)Since he has no claim for unpaid

Maintenance and cure, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Wennberg on his claim for delayed payment of Maintenance and Cure.

    iv.    **Fourth Incident**

Mr. Wennberg has no claim for unpaid Maintenance and Cure, including unearned wages, as a result of the fourth alleged incident where he cut his leg a second time on an unsafe condition in the engine room that he was responsible for maintaining as Temporary Chief Engineer. Mr. Wennberg testified that the Defendants paid all of his medical bills resulting from this incident and that he returned to work the same day he was injured. *Pyles v. Am. Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (Seaman cannot remain silent and wait until such time as pleases his convenience to assert claim and then recover for days worked of his own free choice, nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.) Since he has no claim for unpaid Maintenance and cure, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Wennberg on his claim for delayed payment of Maintenance and Cure.

    v.    **Fifth Incident**

Mr. Wennberg has no claim for unpaid Maintenance and Cure, including unearned wages, as a result of the fifth alleged incident where a battery malfunction occurred because of his own failure to inspect and maintain said battery in proper working order creating an unsafe condition in the engine room that he was responsible for maintaining as Temporary Chief Engineer. Mr. Wennberg testified that the Defendants paid for his examination at Mount Sinai following the incident. Mr. Wennberg was not declared unfit for duty and he testified that he immediately returned to work. *Pyles v. Am. Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (Seaman cannot remain silent and wait until such time as pleases his convenience to assert claim and then

recover for days worked of his own free choice, nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.) Since he has no claim for unpaid Maintenance and cure, there is no legally sufficient evidence upon which a reasonable jury could find in favor of Plaintiff Wennberg on his claim for delayed payment of Maintenance and Cure.

    b.   <u>Counts II & III  –   Claim for PTSD</u>

Defendants are entitled to a judgment as a matter of law on Plaintiff Wennberg's claim for PTSD under *Willis v. Royal Caribbean Cruises, Ltd.,* 77 F.4th 1332 (11th Cir. 2023).  These injuries are patently not readily observable and there is no medical testimony whatsoever in the record that the December 23, 2021 collision caused them.

In the case of Plaintiff Wennberg there has been no evidence, and certainly no medical evidence, presented whatsoever that Mr. Wennberg was ever even diagnosed with PTSD or sought out any psychiatric treatment whatsoever following the December 23, 2021 collision. Even Mr. Wennberg's own testimony did not assert that he suffers from PTSD. Therefore, no *reasonable* juror could conclude Mr. Wennberg suffers from PTSD. The Court should guard against any possibility of that occurring in this case and enter judgment as a matter of law on this claim.  *See also Willis v. Royal Caribbean Cruises, Ltd.,* 77 F.4th 1332 (11th Cir. 2023) (holding, in the maritime context, non-readily observable injuries require medical expert testimony to prove causation).

    c.   <u>Counts II & III  –   Claim for Back and Hip Conditions</u>

Under *Willis v. Royal Caribbean Cruises, Ltd.,* 77 F.4th 1332 (11th Cir. 2023), judgment as a matter of law is unequivocally required on Mr. Wennberg's claims for damages arising from Mr. Wennberg's back and hip conditions.  These injuries are patently not readily observable and

there is no medical testimony that the December 23, 2021 collision caused them. Mr. Wennberg's treating physician Dr. William Munoz testified at trial that he was not able to causally relate Mr. Wennberg's degenerative back and hip conditions to the December 23, 2021 collision and that Mr. Wennberg treated for his identical back condition seven months prior to the collision in May 2021 for symptoms which incepted one month before noting same to have been from insidious (gradual) onset.

Judgment as a matter of law is also warranted on Mr. Wennberg's claim based on an injury to his hip as the testimony from Dr. Munoz was insufficient to causally relate this degenerative condition to the December 23, 2021 collision.

d. <u>Counts II & III – Claim for Injuries Resulting from Incidents 1, 2, 4 and 5</u>

Plaintiff Fred Wennberg testified that he was the Temporary Chief Engineer aboard the Utopia IV. As the Temporary Chief Engineer aboard the vessel it was Mr. Wennberg's duty to maintain safe conditions in the engine room. Mr. Wennberg testified that he failed to maintain safe conditions in the engine room and that this failure to maintain safe conditions in the engine room resulted in his alleged injuries in Incidents 1, 2, 4 and 5.

Under the Primary Duty Doctrine that applies in maritime law cases in the Eleventh Circuit, the employee responsible for maintaining safe conditions may not sue his employer for his own failure to maintain safe conditions. *See* <u>Manu v. United States</u>, 323 F. Supp. 3d 1346, 1354 (S.D. Ala. 2018). Accordingly, based on his own testimony that he had full reign of the engine room and was responsible for maintaining safe conditions in the engine room, Mr. Wennberg cannot recover for his injuries resulting from Incidents 1, 2, 4 and 5 which were caused by his own failure to maintain safe conditions in the engine room.

WHEREFORE, UTOPIA YACHTING, LLC, and the M/V UTOPIA IV, move this Honorable Court for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 on the foregoing claims.

Dated this 13th day of April 2025.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on April 13, 2025, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

MOORE & COMPANY, P.A.
Kavan Vartak, Esq.
Michael T. Moore, Esq.
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: kvartak@moore-and-co.com
Email: michael@moore-and-co.com
***Attorneys for Plaintiff Eric Ward***

Campbell Johnston Clark, LLP
2600 Douglas Road
Suite 508
Coral Gables, FL  33134
Tel. : 786-204-3784
Email: neil@cjclaw.com
Email: chase@cjclaw.com
Email: cindy@cjclaw.com

Email : marissa@cjclaw.com

By:     */s/    Neil    Bayer*
    Neil Bayer, Esq.
    Fla. Bar No.: 615684

    Chase Alexandra Jansson, Esq.
    Fla. Bar No.: 1002265

20452865.v1