UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-23847-CIV-BLOOM/GOODMAN

ERIC WARD,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829,
MMSI No.339328000, her engines, tackle,
gear, appurtenances, etc., *in rem*,
UTOPIA YACHTING LLC, *in personam*,

    Defendants.

_____/

## **DEFENDANTS' MOTION TO AMEND THE JUDGMENT**

    Defendants, UTOPIA YACHTING LLC and the M/Y UTOPIA IV move the Court pursuant to Federal Rule of Civil Procedure 59(e) to amend the final judgments in favor of Defendants Wennberg and Ward.

    The judgment in favor of Fred Wennberg must be amended because the jury awarded him $181,500 in past lost wages for the third and fifth incidents but there is no evidence indicating Mr. Wennberg lost any wages as a result of those injuries. At minimum the awards are duplicative and one should be stricken. The jury's award of punitive damages to Mr. Wennberg and Mr. Ward for failure to pay cure also must be amended. The ratio of these punitive damages awards to the compensatory damages awarded exceeds the Supreme Court established permissible ratio in maritime cases.

## I. LEGAL STANDARD

District courts may alter or amend a final judgment to correct a manifest error of law or fact. *Phillips v. FedEx Ground Package Syst., Inc.*, No. 23-10005, 2024 WL 1191819, at *5 (11th Cir. Mar. 20, 2024); *Jenkins v. Anton*, 922 F.3d 1257, 1263 (11th Cir. 2019). The rule covers a broad range of motions; the only real limitation is that the motion must request a substantive alteration of the judgment, not merely a clerical error, or relief of a type wholly collateral to the judgment. *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96-97 (2d Cir. 2014); *see Martins v. Royal Caribbean Cruises, Ltd.*, No. 15-21124-CIV, 2018 WL 1072196, at *19 (S.D. Fla. Feb. 27, 2018). ("A manifest error of fact or law occurs when the Court finds that there is a need to alter or amend the judgment to prevent injustice."). A district court may reexamine a jury's verdict for legal error. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999). Therefore, if the court detects legal error, it has the obligation and the power to correct the error by vacating or reversing the jury's verdict. *Id.* Similarly, where a portion of a verdict is for an identifiable amount that the law does not permit, the court may modify the jury's verdict to that extent and enter judgment for the correct amount. *Id.*

### A. The Court Should Amend the Judgment for Fred Wennberg Because the Jury's Award of Duplicate Past Wages is a Legal Error.

The Court should amend the jury's award for past lost wages[1] (for Counts 2 and 3) arising from the third and fifth incidents because the awards are identical, and no record evidence supports

---

[1] The verdict form indicates the award is for "past net lost wage-earning capacity" but the award is plainly for past lost wages. The jury was instructed to consider past lost wages and benefits only, rather than earning capacity. *See* Jury Instr. at 1 ("You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole."); *id.* at 21 (If you find that damages have been proved by a preponderance of the evidence, you should consider only the following elements of damage: net lost wages and benefits to the date of trial; net lost wages and benefits in the future [reduced to present value]; medical and hospital expenses incurred in the past [and likely to be incurred in the future]; and physical and emotional pain and anguish."); *see also Tharpe v. U.S.*, No. 15-CV-21340-UU, 2016 WL 4217863, at *7 (S.D. Fla.

2

either award. It is axiomatic that "no duplicating recovery of damages for the same injury may be had." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009) (citing *White v. U.S.*, 507 F.2d 1101, 1103 (5th Cir. 1975)). A double recovery occurs when the damages awarded on two or more claims stemming from the same conduct exceeds the actual damages proven by the plaintiff at trial. *Democratic Republic of the Congo v. Air Cap. Grp., LLC*, 614 Fed. App'x 460, 474 (11th Cir. 2015). Where an award is duplicative, even if the claims themselves are not inherently duplicative, the court is required to reduce the award. *E.J. Books Co. v. Cambridge Sec. Seals*, No. 12-CV-2937, 2015 WL 9704079, at *13 (S.D.N.Y. Dec. 23, 2015).

Here, the jury awarded Mr. Wennberg identical amounts for lost wages resulting from the third and fifth incidents. Both awards were for $181,500.00. However, the evidence does not support these awards. There is no record evidence that Mr. Wennberg was deprived of lost wages as a result of his injuries in either the third or the fifth incidents He never stopped working after any of the incidents,

Q: But each time you were hurt, you went back to work, correct?

A: Yeah.

ECF 413 at 116:2-4.

Moreover, there is no evidence that Mr. Wennberg lost $181,500 in wages in approximately one month. The third incident occurred on December 23, 2021. The fifth incident occurred the following month, in January 2022. Mr. Wennberg did not lose $181,500 of wages in a single month. That the awards cover the same period of time, save for one month, shows they

---

Apr. 27, 2016) ("Lost earning capacity damages reflect the impairment of one's ability to work in the future."). Furthermore, the parenthetical statement following the interrogatory on the verdict form clearly reflects that the award is to be for "unearned wages." It reads, "(Do not include unearned wages in this total if you awarded unearned wages as part of maintenance and cure)." ECF 386 at 11, 17.

3

are, at a minimum, duplicative. That the injuries Mr. Wennberg sustained in either incident did not cause him to stop working aboard the Utopia IV for the same wages he had earned before the incidents demonstrates the evidence is insufficient to support either award.

In view of his testimony that he never stopped working as a result of any of the five incidents on the Utopia IV (*id.*), there is no evidence to support any award of past lost wages for Mr. Wennberg, and the Court should therefore amend the judgment to remove such awards. At a minimum, the jury's identical award for the third and fifth incidents is a double recovery—a legal error—and this Court should, at least, strike the jury's award for the third incident if it does not remove both awards for past lost wages. *See Clark v. City of Tucson*, No. CV-14-02543-TUC-CKJ, 2020 WL 914524, at * 19 (D. Ariz. Feb. 26, 2020) (remitting a jury's awards where the jury awarded identical amounts for the plaintiff's distinct legal causes for retaliation because the awards were duplicative and unsupported by record evidence).

B. **The Court Should Amend the Judgments for Ward and Wennberg Because the Appropriate Ratio of Punitive to Compensatory Damages is 1:1.**

The Court should amend the Ward and Wennberg judgments to reflect the appropriate ratio of compensatory to punitive damages in a maritime case, 1:1. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 508 (2008) ("Traditionally, courts have accepted primary responsibility for reviewing punitive damages . . ..).

In maritime cases where the tortfeasor's conduct is less than egregious and the compensatory damages are substantial, the appropriate ratio of punitive to compensatory damages is 1:1. *See Exxon*, 554 U.S. at 511. In *Exxon*, the Supreme Court of the United States analysed punitive damages under maritime law, concerned with the historically unpredictable nature of punitive damage awards generally. *Id.* at 497-503. The Court emphasized the need for guidelines to regulate punitive damages and noted that, "as long as there are no punitive-damages guidelines,

4

corresponding to federal and state sentencing guidelines, it is inevitable that the specific amount of punitive damages awarded whether by a judge or by a jury will be arbitrary." *Id.* at 506 (quoting *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 678 (7th Cir. 2003)).

    The Court decided that an approach that connects the amount of a punitive award to the amount awarded for compensatory damages using a ratio or maximum multiple corresponds with the laws of many states and Congress, and is appropriate because "the potential relevance of the ratio between compensatory and punitive damages is indisputable, being a central feature in our due process analysis." *Id.* at 507. In *Exxon*, the Court rejected a 3:1 ratio, concluding such a proportion should be reserved for only the most egregious conduct. *Id.* at 510. Instead, the Court characterized Exxon's conduct in spilling millions of gallons of crude oil into Prince William Sound as reckless, profitless to the tortfeasor, and resulting in substantial recovery for substantial injury. *Id.* at 476, 511. As such, a ratio of punitive to compensatory damages of 1:1, a slightly higher ratio than the median ratio used in hundreds of punitive damages cases encompassing the most to least blameworthy conduct, is an appropriate upper limit in similar maritime cases. *Id.* at 512-513. The Court then vacated the jury's award and remanded the case for the appellate court to remit the punitive damages award accordingly. *Id.* at 515; *cf. Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 30 (3d Cir. 2008) (reducing the punitive damages award to an amount equal to a 1:1 ratio in line with *Exxon* because the defendant's conduct—deliberately refusing to tender policy limits to manipulate a co-insurer into paying more and appointing conflicted counsel to protect its own financial interests—was only moderately, not egregiously, reprehensible and there was a substantial compensatory award).

    1.    *Fred Wennberg's Awards*

Under Count 1, for the third incident, the jury awarded Mr. Wennberg $450,000 for Defendants' wilful failure to pay cure (i.e., punitive damages) and $150,000 in cure. Thus, the ratio of punitive to compensatory damages is 3:1. For the fifth incident, the jury awarded Mr. Wennberg $90,000 for wilful failure to pay nursing and medical expenses (i.e., punitive damages) and $30,000 in cure, also a 3:1 ratio. However, given that Defendants continuously attempted to, and did, reimburse Mr. Wennberg for his medical bills and allowed him paid time off as soon as he requested it, Defendants' conduct did not rise to the level of the most egregious conduct. *See* ECF 398-5 (Pls.' Ex. 166–E-mail string where Denise Dubois requested Mr. Wennberg's receipts for reimbursement and Joe Bolyard explained that, even though Mr. Wennberg had failed to have the captain approve of the expenses, she would submit the receipts for reimbursement); ECF 398-4 (Pls.' Ex. 165–E-mail from Denise Dubois stating that she was attempting to pay for Mr. Wennberg's medical bills but could not without the information Mr. Wennberg failed to include in the form); ECF 398-9 (Pls.' Ex. 170–E-mail from Neil Bayer to Mr. Wennberg that Defendants paid his medical bills from Mount Sinai); ECF 398-6 (Pls.' Ex. 167–E-mail that Defendants granted Mr. Wennberg's request for two weeks paid leave).

Additionally, where Mr. Wennberg's future treatment consists mainly of physical therapy, steroid injections, and orthopedic visits two to three times a year, $150,000 and $30,000 in cure for the third and fifth incidents, respectively, is substantial compensation. ECF 415-1 at 39:11-40:12 (Rough). Therefore, under *Exxon*, a 1:1 ratio is appropriate, and the Court should amend the judgment to award Mr. Wennberg a maximum of $150,000 and $30,000 for wilful failure to pay cure for the third and fifth incidents, respectively. *See Johansen*, 170 F.3d at 1332 (holding that remittitur or a new trial was not required where the court determined that a punitive damages award was a legal error; rather, the court could amend the judgment); *Exxon*, 554 U.S. at 508 ("[A]dopting

an admiralty-law ratio is no less judicial than picking one as an outer limit of constitutionality for punitive awards.").

### 2. Eric Ward's Award

The jury awarded Mr. Ward $100,000 for willful failure to pay cure and $5,000 in cure, a 20:1 ratio. Defendants' conduct regarding Mr. Ward's medical expenses, however, was exemplary, not egregious. About three weeks after the collision, Defendants retained a medical management company, Medical Solutions Services ("MSS"), for the specific purpose of facilitating payment of medical expenses for seven people injured during the December 23, 2021 collision, including Mr. Ward.

> Q: And as part of MSS's work, does the company either pay or facilitate payments of bills from medical providers who provide services to crew members?
>
> A: MSS has a provider pay department. In this particular case, these claims the payment was made but [sic] clients as I said with a credit card on file.
>
> …
>
> Q: Okay now was MSS engaged in connection with a [sic] accident involving the UTOPIA IV on December 23, 2021?
>
> A: The files were received according to my records on January 3rd, 2022.
>
> …
>
> A: We were notified that there were 7 injured crew members. And they asked us to do what we standardly do which is medical case management and assist them with attainment of medical records and claims.

ECF 415-2 at 67:15-20, 70:4-15 (Rough).

It was Mr. Ward himself who thwarted Defendants' efforts to pay his medical expenses. When Defendants first retained MSS, about three weeks after the collision, MSS promptly contacted Mr. Ward in January 2023 to inform him of their role. *Id*. at 71:15-17. Mr. Ward did not bother to return their call until May 27, 2022. *Id.* at 71:18-21. Mr. Ward refused to provide MSS

7

with his medical providers' information, medical records, notice of his appointments, and any other information with which Defendants could make the good faith investigation of his claims that the law permits.

> Q: Did Mr. Ward let MSS know when he had scheduled appointments with medical providers?
>
> A: No we would get called at times from providers on the days he was at the appointments and they would ask us to make payment for the evaluation and then there was times that we would get calls where Mr. Ward said he wasn't allowed to be seen because payments weren't made ahead of time and we weren't aware of these appointments or the schedule.
>
> Q: Did that impede your ability . . . to facilitate payment of Mr. Ward's providers when you would receive calls on the same day the service was being provided?
>
> A: Yes. We couldn't always facilitate the payment exactly. But we did reach out to everyone. Our clients' vessel representative and the provider, towards trying to reconcile that. And make his treatments available to him.

*Id*. at 73:7-21, 93:1-8 (MSS was informed that three of five of Mr. Ward's providers were unable to release his medical records pursuant to a handwritten note by Mr. Ward). According to MSS's representative, Ward "declined us having access to any of his medical information." *Id*. at 72:2-25.

Despite Ward's refusal to cooperate with MSS, Defendants paid Mr. Ward's medical expenses as they became aware of them.

> Q: The – and did MSS facilitate payment of Mr. Ward's medical bills for his care and treatment you resulting from this accident even though he didn't provide records that you could review as you usually do?
>
> A: That is correct.

*Id*. at 116:18-22; *see also* ECF 394-7 (Defs.' Ex. 45a). MSS' representative testified that MSS broke rules "trying to make sure that payments were made for Mr. Ward." ECF 415-2 at 116:23-25 (Rough). It was Mr. Ward's conduct in failing to cooperate with MSS' efforts to pay his bills–

8

not Defendants' conduct–that was egregious. *Id*. at 72:2-4 ("In general, Mr. Ward was very angry and agitated whenever he communicated to us[;] at points he would swear to my team and myself.") That evidence was unrebutted. MSS and Defendants should be complimented, not punished, for their payment of cure for Ward.

Nor were Defendants at fault for delays in completing Mr. Ward's hip surgery. MSS' representative's, Catherine Borowski's, testimony and Defendants' Exhibit 45a showed that payment for the surgery had been authorized before the earliest date the surgery was scheduled. *Id.* at 92:9-12; ECF 394-7 (Defs.' Ex. 45a–showing when payments were authorized and made). The subsequent delays were caused by the requirements from his physicians that he undergo evaluations from a cardiologist and neurologist to be cleared for surgery, scheduling issues not within the control of Defendants, trial conflicts, and other circumstances, not Defendants' refusal to authorize or pay for the surgery. ECF 415-2 at 92:19-24 (Rough); ECF 409 at 36:2-19, 38:6-9. Throughout, Defendants maintained contact, and followed up, with Mr. Ward's medical providers regarding payment for his hip surgery.

> Q: And – can then in August of 2024, did MSS learn from the Boulder Center that prepayment for the surgery was not possible?
>
> A: Yes. We contacted Boulder and the records reflect that they weren't able to give us the amount that needed to be paid. And obviously we said please call us back when you have that information.

ECF 415-2 at 98:19-25 (Rough). These steps and the ultimate payment of Mr. Ward's medical bills show that Defendants actively attempted timely payment of Mr. Ward's medical bills, rather than callously and wilfully refusing to pay them. Accordingly, the appropriate ratio of punitive to compensatory damages is 1:1, and this Court should amend the judgment to award Mr. Ward a maximum of $5,000 for wilful failure to pay cure. In any event, the highest ratio the Court considered in *Exxon* was 3:1, which it noted was reserved for the most egregious conduct. *Exxon*,

9

554 U.S. at 510. Therefore, even if the Court views Defendants' conduct here as the most egregious possible, the upper limit of available punitive damages available to Ward is $15,000.

## II.     CONCLUSION

This Court should exercise its authority to amend the judgment to correct several legal errors in this case. First, the jury awarded Mr. Wennberg duplicate past wages awards for the third and fifth incidents, which are unsupported by record evidence. Because the evidence does not show that Wennberg lost any wages in the past, the court should strike both awards for lost wages. At a minimum it should strike the award for the third incident because there is no way Wennberg lost $181,500 in wages in the one month between the third and fifth incidents, when he never stopped working! Second, where Defendants' conduct in paying Plaintiffs' medical expenses was not egregious, the appropriate ratio for punitive to compensatory damages in this case is 1:1. At most, assuming Defendants' conduct was the most egregious, the upper limit for punitive damages is 3:1. Accordingly, the punitive damages awarded to both Mr. Wennberg and to Mr. Ward should be amended downward.

**WHEREFORE**, UTOPIA YACHTING, LLC, and the M/V UTOPIA IV, request the Court pursuant to Federal Rule of Civil Procedure 59(e) to amend the final judgment in favor of Defendant Wennberg by striking the awards for past lost wages for both the third and fifth incidents or, alternatively, striking the award for past lost wages for the third incident, and by reducing the award of punitive damages for failure to pay cure for the third incident from $450,000 to $150,000 and from $90,000 to $30,000 for the fifth incident, and to amend the final judgment in favour of Defendant Ward by reducing the award of punitive damages for failure to pay cure from $100,000 to $5,000 or, alternatively, to, at most, $15,000, and for such other relief as the Court may deem just and proper.

10

|  | Respectfully submitted, |
|---|---|
|  | /s/ *Joshua D. Lerner* |
| NEIL BAYER | JOSHUA D. LERNER |
| Florida Bar No.: 615684 | Florida Bar No. 455067 |
| CHASE ALEXANDER JANSSON | Email: jlerner@rumberger.com |
| Florida Bar No. 1002265 | docketingmiami@rumberger.com and |
| CAMPBELL JOHNSTON CLARK, LLP | jlernersecy@rumberger.com |
| 2600 Douglas Road, Suite 508 | RUMBERGER, KIRK & CALDWELL, P.A. |
| Coral Gables, Florida 33134 | Brickell City Tower, Suite 3000 |
| neil@cjclaw.com | 80 S.W. 8th Street |
| chase@cjclaw.com | Miami, Florida  33130 |
| cindy@cjclaw.com | Telephone:  (305) 358-5577 |
| Telephone:  (786) 204-3784 | *Co-Counsel for Defendant* |
| *Counsel for Defendant* |  |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of May 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties on the Service List below.

/s/ Joshua D. Lerner
Joshua D. Lerner

## SERVICE LIST

Kavan Vartak, Esq.
Michael T. Moore, Esq.
Moore & Company, P.A.
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Email: kvartak@moore-and-co.com;
michael@moore-and-co.com
*Counsel for Plaintiff*