UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-23847-CIV-BLOOM/GOODMAN

ERIC WARD,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829,
MMSI No.339328000, her engines, tackle,
gear, appurtenances, etc., *in rem*,
UTOPIA YACHTING LLC, *in personam*,

    Defendants.
_____/

**DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

As to the claims of Plaintiffs Fred Wennberg and Eric Ward, Defendants UTOPIA YACHTING LLC and the M/Y UTOPIA IV renew their Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b).

There is no evidentiary support for the award of cure to Mr. Wennberg for the third and fifth incidents because he never stopped working and continued to receive his full wages through the end of his employment on the Utopia IV. And even while paying him his full wages, the vessel also paid the medical bills that he submitted. Since he should not have received an award for cure arising from these incidents, the evidence was also insufficient to support an award of punitive damages for failure to pay cure. The jury also awarded Mr. Wennberg money to compensate for his past lost wages (or past lost earning capacity). There is no evidence to show his injuries caused any such damages because he never stopped working as a result of them.

The jury awarded punitive damages to Eric Ward for the vessel's wilful delay of cure. The only evidence of wilful and arbitrary behaviour in connection with payment of Mr. Ward's medical expenses was on the part of Ward himself, not the defendants. In the absence of evidence of the vessel's wilful and arbitrary delay in paying cure, the Court should enter judgment as a matter of law for the defendants on Ward's claim for punitive damages.

I.      **LEGAL STANDARD**

If a court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. Fed. R. Civ. P. 50(b). A party may renew its motion for judgment as a matter of law after trial. *Id.* The standard for granting a renewed motion for judgment as a matter of law is the same as the standard for granting the pre-submission motion. *McGinnis v. American Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient . . . to find for the party on that issue." *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). In considering whether the verdict is supported by sufficient evidence, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995). Courts should grant motions for judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).

## II.   CLAIMS OF FRED WENNBERG

### A.   There is Insufficient Evidence to Support an Award for Cure.

There is insufficient record evidence to support an award for cure to Fred Wennberg for the third and fifth incidents. As the Court correctly noted, and Plaintiffs' counsel agreed, it was undisputed at trial that Defendants paid all of Plaintiffs' medical bills.

> The Court: Mr. Bayer, you have continually advised the Court, as well as the jury that the bills have been paid. And to the extent that the Defendants have paid these bills – and I'm not just speaking with regard to Mr. Ward. I'm speaking with regard to Mr. Parrott and Mr. Wennberg – I'm not understanding why the bills cannot be introduced as one agreement so that we don't need to take the time to introduce them piecemeal, if, in fact, the Defendant has paid every bill.
>
> …
>
> But I'm talking about specifically the bill itself, because I'm looking at an exhibit list that has many, many, many medical bills, and it seems that they are not in dispute that this is the amount of the bill, and the bill was eventually paid.
>
> Mr. Vartak: Agreed. That should not be in dispute.

ECF 409 at 68:8-15, 72:5-10.

Furthermore, Mr. Wennberg voluntarily continued working following the third and fifth incidents. When a seaman voluntarily continues working at his usual post following an injury, he is not entitled to maintenance and cure. *Wilson v. U.S.*, 229 F.2d 277, 280 (2d Cir. 1956) ("[Libelant] does not ask for maintenance and cure for the days he worked; to this he clearly is not entitled, since maintenance and cure is intended to assist seamen who are incapacitated in the course of their employment and cannot earn enough to provide themselves with proper medical care and lodging and sustenance."); *Pyles v. American Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) ("What we hold is that a seaman cannot remain silent and wait until such time as pleases his convenience to assert a claim and then recover for days worked of his own free choice for pay equal to or in excess of the contractual maintenance and cure allowance. Nor is he entitled

3

to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention."); *Wilcox v. U.S.*, 32 F. Supp. 947, 949 (S.D.N.Y. 1940) ("There is nothing in the record to justify an award for maintenance and cure. Both libellants stood their regular watches on the way back to the United States, and received full wages to the end of the voyage. They were given medical assistance at the Marine Hospital in New York, but neglected to continue their treatments there.").

### 1. Third incident

While three or four other seamen aboard the Utopia IV during the collision immediately sought medical treatment at a nearby hospital, Mr. Wennberg continued working. ECF 412 at 57:11-21. Mr. Wennberg visited a hospital in the Bahamas the day after the collision, which Defendants paid for, and continued working on the vessel for the following month.

> Q: Okay so how – so basically you stayed employed and working as chief engineer even after the collision?
>
> A: Yeah I have integrity.

*Id.* at 61:5-7.

### 2. Fifth incident

Mr. Wennberg also continued working following the fifth incident.

> Q: Okay. So after the fifth incident in January at Merrill-Stevens what did you do next in regards to your employment on the yacht?
>
> A: I was there working until one day I got a message from Peter S that I was on leave. Is that what you want to hear?
>
> Q: Well, how many days after the battery explosion did you continue working on the yacht?
>
> A: I worked about 10 or 11 more days. I think it was something like that.

*Id.* at 100:7-15. Mr. Wennberg intended to continue working after each of his injuries.

Q: Did you intend to continue working on the Utopia after these five injuries?

A: Yes.

Q: Would you have continued working on the Utopia as well if you hadn't been fired?

A: Yes, I would.

*Id.* at 111:1-6. Accordingly, there is insufficient record evidence to support an award for cure to Mr. Wennberg. *See Pyles*, 372 F.2d at 619; *Wilson*, 229 F.2d at 280.

### B. There is Insufficient Evidence to Support an Award for Wilful Failure to Pay Cure.

Because Mr. Wennberg is not entitled to maintenance and cure, there is insufficient record evidence to support an award for wilful failure to pay nursing and medical expenses, i.e., cure. Punitive damages are allowed only where compensatory damages have been awarded. *Durham v. New Amsterdam Cas. Co.*, 208 F. 2d 342, 345 (4th Cir. 1953); *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1339 n.4 (9th Cir. 1985). Furthermore, the record reflects Defendants' substantial efforts to reimburse Mr. Wennberg for his medical expenses.

Damages for wilful failure to pay maintenance and cure are punitive damages that compensate a seaman when an employer wilfully and arbitrarily refuses to make such payments when they are legally due. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 417-18 (2009). An employer's conduct in refusing to pay maintenance and cure must exceed unreasonableness and instead be callous and recalcitrant, arbitrary and capricious, or wilful, callous and persistent to support an award for wilful failure to pay maintenance and cure. *Id.* Punitive damages under maritime law, when available, arise only in those very rare situations of intentional wrongdoing. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1328 (S.D. Fla. 2019). To demonstrate intentional misconduct, the plaintiff must show the defendant had actual knowledge of the

wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct. *Id.* (quotation marks omitted). Furthermore, when a seaman demands maintenance and cure, an employer is not obliged to immediately begin payments; rather, it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013).

Defendants actively sought to pay Mr. Wennberg's medical bills and allowed him paid time off as soon as he requested it. *See* ECF 398 (Pls.' Ex. 166) (E-mail string where Denise Dubois requested Mr. Wennberg's receipts for reimbursement and Joe Bolyard explained that, even though Mr. Wennberg had failed to have the captain approve of the expenses, he would submit the receipts for reimbursement); ECF 398 (Pls.' Ex. 165) (E-mail from Denise Dubois stating that she was attempting to pay for Mr. Wennberg's medical bills but could not without the information Mr. Wennberg failed to include in the form); ECF 398 (Pls.' Ex. 170) (E-mail from Neil Bayer to Mr. Wennberg that Defendants paid his medical bills from Mount Sinai); ECF 398 (Pls.' Ex. 167) (E-mail that Defendants granted Mr. Wennberg's request for two weeks paid leave). Accordingly, there is insufficient evidence for a reasonable jury to have determined that Defendants' conduct rose to the level of wilfulness needed to support an award for punitive damages. *See Moran v. Signet Maritime Corp.*, No. CV H-21-04214, 2022 WL 3719979, at *1 (S.D. Tex. Aug. 29, 2022) (granting summary judgment because employer's conduct was not "wilful and wanton" to support a claim for wilful failure to pay cure where seaman gave no indication that he would seek maintenance and cure until after the employer terminated his employment more than a month after his injury).

### C. There is Insufficient Evidence to Support an Award for Past Lost Wages.

Because Mr. Wennberg continued working after the third and fifth incidents, he is not entitled to past lost wages.[1] Past lost wages are measured by the actual wage losses incurred by the plaintiff from the date of the accident to the date of trial. *See Varela v. Dantor Cargo Shipping, Inc.*, No. 17-23127-CIV, 2017 WL 7184605, at *3 (S.D. Fla. Nov. 14, 2017). The sum is determined by calculating the amount of money the plaintiff would have earned had he continued at his pre-accident employment, less any wages he earned since the accident. *Matter of Lasala*, 644 F. Supp. 3d 245, 274-75 (E.D. La. 2022).

A plaintiff is not entitled to past lost wages when they continue working and earning wages after the accident. *See id.* at 274 (holding that, where plaintiff continued working for a time after suffering an injury, calculation of past lost wages began when he stopped working, rather than after the accident); *Ledet v. Smith Marine Towing Corp.*, 2011 WL 1303918, at *12 (E.D. La. 2011) (holding that, because the amount paid by the defendant in wage continuation must be subtracted from the amount the plaintiff could have earned had he continued to work as a deckhand, the plaintiff was not entitled to an award of past wage loss); *Eckert v. U.S.*, No. 01-

---

[1] The verdict form indicates the award is for "past net lost wage-earning capacity" but the award is plainly for past lost wages. The jury was instructed to consider past lost wages and benefits only, rather than earning capacity. *See* Jury Instr. at 1 ("You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole."); *id.* at 21 (If you find that damages have been proved by a preponderance of the evidence, you should consider only the following elements of damage: net lost wages and benefits to the date of trial; net lost wages and benefits in the future [reduced to present value]; medical and hospital expenses incurred in the past [and likely to be incurred in the future]; and physical and emotional pain and anguish."); *see also Tharpe v. U.S.*, No. 15-CV-21340-UU, 2016 WL 4217863, at *7 (S.D. Fla. Apr. 27, 2016) ("Lost earning capacity damages reflect the impairment of one's ability to work in the future."). Furthermore, the parenthetical statement following the interrogatory on the verdict form clearly reflects that the award is to be for "unearned wages." It reads, "(Do not include unearned wages in this total if you awarded unearned wages as part of maintenance and cure)." ECF 386 at 11, 17.

8449-CIV, 2002 WL 31687558, at *1 (S.D. Fla. Oct. 3, 2002) (amending a judgment following a jury trial because the judgment did not reflect a setoff against the plaintiff's recovery for past lost wages that had already been recovered); *Crum v. U.S.*, Civ. A. No. 99-2178, 2000 WL 943253, at *3 (E.D. La. 2000) (finding that where an injury did not prevent the plaintiff from returning to work, he was not entitled to past wages).

Here, the jury awarded Mr. Wennberg past lost wages from the third and fifth incidents to the date of trial. However, Mr. Wennberg did not lose wages during either time period because of his injuries. He testified that he continued working aboard the Utopia IV following the third and fifth incidents, and there was no connection between any of Mr. Wennberg's injuries and his cessation of work on the Utopia IV. ECF 412 at 111:1-6; *Baylor v. Beacon Pointe Apartments, LLC*, No. CV BAH-21-3296, 2025 WL 455360, at *9 (D. Md. Feb. 11, 2025) ("As with other items of damage, plaintiff must show that the loss of earnings was attributable to those injuries sustained due to defendant's wrongful conduct. Other motivations for discounting employment are obviously insufficient to support an award for lost earnings.").

Moreover, after his employment aboard the Utopia IV, Mr. Wennberg obtained employment with higher earnings.

> Q: [S]o you were able to return to work and make a hundred dollars more a day than you were making on the UTOPIA, right?
>
> A: Yeah.

ECF 413 at 111:21-23,. Therefore, there is insufficient record evidence to support an award of past lost wages. At a minimum, Mr. Wennberg's ability to obtain subsequent employment earning higher wages evidences a failure to mitigate his damages during any time period he was not working. *See* Jury Instr. at 21.

> 1. *The result is the same if the award was for lost earning capacity.*

8

In the event the Court interprets the jury's award for "past net lost wage-earning capacity," as compensation for Mr. Wennberg's diminution in past earning capacity, rather than for lost wages, there is similarly insufficient record evidence to support the award. Mr. Ward and Mr. Wennberg retained a rehabilitation counsellor and life care planner, Ira Morris, to testify regarding future care and lost earning capacity. Mr. Morris only testified as to Mr. Ward's lost earning capacity. He had nothing to say about Mr. Wennberg's lost earning capacity.

> Q: So to start off can you tell us today why you are here?
>
> A: Certainly. I am a rehabilitation counselor in life care planner. And I have been retained by the Plaintiffs Mr. Ward and Mr. Wennberg in this matter to provide assessment as to Mr. Ward's loss of earning capacity and both Mr. Ward and Mr. Wennberg's future care that is anticipated to be reasonably necessary.
>
> …
>
> Q: Okay. And now let's shift gears to Mr. Fred Wennberg. So what work did you do for Mr. Wennberg?
>
> A: So as it relates to Mr. Wennberg my role was to develop a life care plan essentially to identify the future care and treatment and future needs that are reasonable within a reasonable degree of certainty going to be necessary.

ECF 415-1 at 7:12-19, 38:3-8. Therefore, there is no record evidence to support an award for past net lost wage-earning capacity.

### III. <u>CLAIMS OF ERIC WARD</u>

#### A. **There is Insufficient Evidence to Support Awards for Wilful Failure to Pay Cure.**

The evidence is also insufficient to support the jury's award of damages under Count I for wilful delay of nursing and medical expenses (i.e., for cure). When an employer hires a company to investigate a seaman's claims for maintenance and cure, and the seaman knows of the arrangement but refuses to provide documentation supporting his claims, the employer's conduct does not support an award for wilful failure to pay cure. *McWilliams v. Texaco, Inc.*, 781 F.2d 514,

519 (5th Cir. 1986). In *McWilliams*, the court affirmed the entry of a directed verdict in favor of the employer on the issue of punitive damages for wilful failure to pay maintenance and cure. *Id.* at 519-520. The court held that the record was devoid of the arbitrary and callous conduct necessary to trigger liability for punitive damages where the employer had a policy that required all seamen requesting maintenance and cure provide a maritime employment company with supporting medical reports, which the seaman knew of, but with which he refused to comply. *Id.*; *see also Williams v. Maersk Line, Ltd.*, 450 F. Supp. 3d 242, 259 (E.D.N.Y. 2020) (noting that, after the employer received the seaman's medical records that indicated a causal connection between his treatment and his injuries, the employer was to investigate the claim and provide a valid reason for denying maintenance and cure to avoid liability for punitive damages).

Here, there is insufficient evidence for a reasonable jury to determine that Defendants' conduct in paying Mr. Ward's medical expenses rose to the level of wilfulness to support an award for wilful failure to pay cure. On the contrary, Defendants exhausted substantial efforts to pay Ward's medical expenses. About three weeks after the collision, Defendants retained a medical management company, Medical Solutions Services ("MSS"), for the specific purpose of facilitating payment of medical expenses for seven people injured during the December 23, 2021 collision, including Mr. Ward.

> Q: And as part of MSS's work, does the company either pay or facilitate payments of bills from medical providers who provide services to crew members?
>
> A: MSS has a provider pay department. In this particular case, these claims the payment was made bit (sic.) clients as I said with a credit card on file.
>
> …
>
> Q: Okay now was MSS engaged in connection with an accident involving the UTOPIA IV on December 23, 2021?
>
> A: The files were received according to my records on January 3rd, 2022.

> …
>
> A: We were notified that there were 7 injured crew members. And they asked us to do what we standardly do which is medical case management and assist them with attainment of medical records and claims.

ECF 415-2 at 67:15-20, 70:12-15. When they were first retained, about three weeks after the collision, MSS contacted Mr. Ward to inform him of their role. *Id.* at 71:11-17. Mr. Ward did not return their call until May 27, 2022. *Id.* at 71:18-21. Mr. Ward refused to provide MSS with his medical providers' information, medical records, notice of his appointments, and any other information with which Defendants could make the good faith investigation of his claims that the law permits.

> Q: Did Mr. Ward let MSS know when he had scheduled appointments with medical providers?
>
> A: No we would get called at times from providers on the days he was at the appointments and they would ask us to make payment for the evaluation and then there was times that we would get calls where Mr. Ward said he wasn't allowed to be seen because payments weren't made ahead of time and we weren't aware of these appointments or the schedule.
>
> Q: Did that impede your ability . . . to facilitate payment of Mr. Ward's providers when you would receive calls on the same day the service was being provided?
>
> A: Yes. We couldn't always facilitate the payment exactly. But we did reach out to everyone. Our clients' vessel representative and the provider, towards trying to reconcile that. And make his treatments available to him.

ECF 415-2 at 73:7-21, 93:1-8 (MSS was informed that three of five of Mr. Ward's providers were unable to release his medical records pursuant to a handwritten note by Mr. Ward). MSS could not facilitate the payment of, and Defendants could not pay, bills they did not have. Nonetheless, Defendants paid Mr. Ward's medical expenses as they became aware of them. ECF 394-7.

Moreover, Defendants were not at fault for the delays in Mr. Ward's hip surgery. Such delays were caused by his requiring additional evaluations from a cardiologist and neurologist,

11

trial conflicts, and internal errors with his medical provider, not Defendants' conduct. ECF 415-2 at 92:19-24; ECF 409 at 36:2-19, 38:6-9. In fact, Defendants were in constant contact with Mr. Ward's medical providers regarding payment for his hip surgery,

> Q: And – can then in August of 2024, did MSS learn from the Boulder center that prepayment for the surgery was not possible. August 21?
>
> A: Yes. We contacted Boulder and the records reflect that they weren't able to give us the amount that needed to be paid. And obviously we said please call us back when you have that information.

ECF 415-2 at 98:19-25. These steps and the ultimate payment of Mr. Ward's medical bills exemplify that Defendants actively attempted payment of Mr. Ward's medical bills, rather than callously and wilfully refusing to pay them. As such, there is insufficient evidence in the record to support an award for punitive damages.

## IV.    CONCLUSION

The evidence Plaintiffs presented at trial was not sufficient to support the damage awards discussed in this motion. Mr. Wennberg is not entitled to cure because he never stopped working and because Defendants paid his medical expenses. Because Mr. Wennberg is not entitled to cure, he is not entitled to damages for wilful failure to pay cure. In any event, as Defendants actively attempted to pay Mr. Wennberg's medical expenses, their conduct did not warrant punitive damages. Defendants also continuously attempted to, and in the vast majority of instances did, pay Mr. Ward's medical bills despite his hostile and obstructive tactics that prevented them from investigating his claims. Because there is no evidence that Defendants callously refused ot pay his medical expenses, the evidence is insufficient to support an award for wilful failure to pay cure for Mr. Ward.

**WHEREFORE**, UTOPIA YACHTING, LLC, and the M/V UTOPIA IV, request the Court to enter judgment as a matter of law on Mr. Wennberg's claims for cure for the third and

firth incidents, for the wilful failure to pay cure, and for his past lost wages, or earning capacity. There was also no evidence that showed that Defendants callously refused or delayed payment of cure for Eric Ward. Defendants therefore ask that the court enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 on the foregoing claims, and for such other relief as the court may deem just and proper.

Respectfully submitted,

*/s/ Joshua D. Lerner*
JOSHUA D. LERNER
Florida Bar No. 455067
Email: jlerner@rumberger.com
docketingmiami@rumberger.com and
jlernersecy@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130
Telephone:  (305) 358-5577
*Co-Counsel for Defendant*

NEIL BAYER
Florida Bar No.:  615684
CHASE ALEXANDER JANSSON
Florida Bar No. 1002265
CAMPBELL JOHNSTON CLARK, LLP
2600 Douglas Road, Suite 508
Coral Gables, Florida 33134
neil@cjclaw.com
chase@cjclaw.com
cindy@cjclaw.com
Telephone:  (786) 204-3784
*Counsel for Defendant*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of May 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the parties on the Service List below.

/s/ *Joshua D. Lerner*
Joshua D. Lerner

## SERVICE LIST

Kavan Vartak, Esq.
Michael T. Moore, Esq.
Moore & Company, P.A.
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Email: kvartak@moore-and-co.com;
michael@moore-and-co.com
*Counsel for Plaintiff*